**The PEOPLE of the State of Colorado, Plaintiff-Appellant,**

**v.**

**Seth YELLEN, Defendant-Appellee.**

**No. 86SA68.**

Supreme Court of Colorado,
En Banc.

June 29, 1987.

---

**1385**

Norman S. Early, Jr., Dist. Atty., Nathan B. Coats, Chief Appellate Deputy Dist. Atty., Donna Skinner Reed, Deputy Dist. Atty., Denver, for plaintiff-appellant.

Diana L. DeGette, Denver, for defendant-appellee.

ROVIRA, Justice.

In this case, for the fourth time in three years, we cross paths with defendant Seth Allen Yellen. *Yellen v. Cooper*, 713 P.2d 925 (Colo.1986); *People v. Yellen*, 704 P.2d 306 (Colo.), *cert. denied*, ___ U.S. ___, 106 S.Ct. 603, 88 L.Ed.2d 582 (1985); *Yellen v. Nelson*, 680 P.2d 234 (Colo.1984). The issue before us on this occasion involves the Denver District Court's dismissal of aggravated robbery and violent crime charges against Yellen due to a violation of his statutory speedy trial rights. The trial court, in computing the elapsed speedy trial time, held that the period was not tolled by Yellen's voluntary request for speedy disposition of a detainer filed against him by authorities in Michigan, and his subsequent removal to Michigan. We disagree, and therefore reverse.

I.

A detailed examination of the facts is necessary to properly understand the context in which the defendant claims his right to a "speedy" trial was denied.

BACKGROUND

On July 15, 1981, an information was filed in the Denver District Court, charging the defendant with aggravated robbery and violent crime in connection with an incident that occurred on June 8. The defendant appeared in court on July 31, 1981, and pleaded not guilty. Trial was set for November 2.

On October 23, 1981, however, the defendant and his counsel appeared in court and requested a continuance. Defendant's counsel told the court that the defendant was awaiting trial in Arapahoe County on a separate matter and wished to delay resolution of the Denver charges until the conclusion of the Arapahoe case:

> [Defense counsel]: Your Honor, it's our feeling and I think our intention, and I think I have clearly discussed this with the District Attorney's Office, and our intention, if Mr. Yellen is convicted in the Arapahoe County case, I believe we would be entering a plea to this, the charge in this case.

The trial court granted the continuance, reset the trial for February 3, 1982, and accepted defendant's written waiver of his speedy trial rights through April 23, 1982. The district attorney noted for the record that the People did not ask for or in any way request a continuance.

Thereafter, on January 8, 1982, the defendant was convicted in the Arapahoe County case. However, on February 3, 1982, when defendant and his counsel returned to the Denver court, defendant was not yet ready to enter a guilty plea. Defendant's counsel reassured the court that, "There is going to be a plea entered in this matter," but requested a delay because Arapahoe was preparing a complete probation "work-up" on the defendant and this information would be useful for the court in the Denver case and prevent needless

duplication. The court granted the continuance through April 12, 1982.

On April 12, however, the defendant failed to appear in court and an alias capias was issued. The defendant also failed to appear on April 2 in the Arapahoe court and probation officers in that county were unable to locate him. Because of the defendant's absence, Arapahoe officers could not complete their "work-up" on the defendant.

On May 14, 1982, the defendant was arrested as a fugitive in Wilkinson County, Mississippi. He objected to extradition and a hearing was held on July 27, 1982, at which he refused to answer questions, invoking his fifth amendment right against self-incrimination. He was returned to Colorado on August 5, 1982, whereupon he instituted a habeas corpus proceeding in the Arapahoe County District Court contending that Colorado courts could not exercise jurisdiction over him because Mississippi authorities had denied him his constitutional rights. The trial court denied relief, and on appeal we also rejected the defendant's claims. *Yellen v. Nelson,* 680 P.2d 234 (Colo.1984).

Meanwhile, the Denver court was advised at a hearing on May 19, 1982, that the defendant had been taken into custody in Mississippi and at a hearing on June 22, 1982, that extradition proceedings were under way. On August 31, 1982, the defendant was returned to the Denver court. On that occasion, the court was advised that the defendant was to be sentenced in Arapahoe County on September 24, 1982, and continued the case until October 28, 1982, in order to permit Denver probation officers once again to obtain and submit the Arapahoe probation report.

The defendant was subsequently sentenced to eight years in prison in the Arapahoe case, and the Arapahoe report, which noted that the defendant had refused to cooperate with the probation department, was filed in the Denver court. However, when the defendant and his counsel appeared in the Denver court on October 28, 1982, they sought another delay. Defense counsel informed the court that defendant had filed the habeas corpus action in Arapahoe County and stated that he was unsure what to do because of the potential relationship between that action and the Denver case. Counsel stated:

We had an agreement that there was going to be a plea entered and basically sentence would hopefully be concurrent with any sentence in Arapahoe County. I'm not sure that I can plead Mr. Yellen at this point and not make all the issues of the writs of habeas corpus moot.

The court granted the continuance through November 16, 1982, but first questioned the defendant:

[COURT]: Mr. Yellen, although we aren't really set for trial and we have been just going along here on this plea business, is it your request that we go along with this procedure?

[DEFENDANT]: Yes, sir.

[COURT]: You feel that that's in your best interests rather than trying to force this either to trial or to disposition?

[DEFENDANT]: Yes, sir.

On November 16, 1982, defendant and his counsel again requested more delay. On this occasion, defendant's counsel told the court that the defendant wished to delay his guilty plea in the Denver case until the habeas corpus action was decided by the Colorado Supreme Court as "a procedural matter at this time to perfect the appeal." Defense counsel reassured the court that "it is my understanding after speaking at length with Mr. Yellen, there is eventually going to be a plea in this case." Counsel also stated: Mr. Yellen is presently incarcerated in the Arapahoe County Jail, he's not going anywhere, and he understands he is going to sit there until it comes down. During the hearing, the trial court examined the record of this case for speedy trial purposes and concluded that all of the delay occasioned since the defendant's original plea had either been occasioned by the request of the defendant or his failure to appear. Defense counsel stated that the court's conclusion was "correct." Further, the defendant executed another waiver of

his speedy trial rights through May 15, 1983. Additionally, the trial court specifically questioned the defendant regarding the continuing delay:

[COURT]: Understanding everything that's been happening out in Arapahoe County, you have had an attorney's advice out there, you have had an attorney's advice here, would it be your request at this time to continue this matter, and is this what you feel is in your best interests?

[DEFENDANT]: Yes, your Honor, I do at this time.

[COURT]: It would be your intent that once this Arapahoe County problem is resolved, that you would be entering a plea in this particular case?

[DEFENDANT]: Yes, sir.

The district attorney at this hearing expressed no objection to a continuance based on the representations that the defendant would plead to the case after the supreme court ruling on his habeas corpus litigation.

Shortly after this hearing, on December 6, 1982, the defendant was sent to the state penitentiary to begin serving the Arapahoe sentence. On February 15, 1983, defendant's counsel appeared in court in Denver and requested another continuance pending disposition of the Arapahoe County appeal. On March 14, 1983, defendant's counsel appeared in court once again and filed a document signed by the defendant waiving his speedy trial rights through August 27, 1983. At this hearing, the district attorney expressed some reservations, and the following exchange occurred:

[D.A.]: Your Honor, I looked at this file in detail last night, and I am still in the dark. I note Mr. Yellen has a very active past. We have a very proveable aggravated robbery here, so I would like to know, and there were no offers—well, there's an offer to plead guilty to count one and remain silent at sentencing.

[DEFENSE COUNSEL]: Yes, that's what's going to take place, that's what we agreed to a long time ago, and Mr. Yellen left and came back, his appeal was pending, and we are waiting for it

and we are going to dispose of him, and at the conclusion of that there's going to be a plea entered in this court.

The district court continued the case to May 17, 1983.

## DEFENDANT'S DEPARTURE

For purposes of the case now before us, the events that occurred next are particularly important. On April 22, 1983, the defendant requested speedy disposition of charges lodged against him in Michigan under provisions of the Interstate Agreement on Detainers Act, § 24–60–501 *et seq.*, 10 C.R.S. (1982). Under this agreement, an imprisoned defendant can petition for speedy disposition of detainers based on untried charges against him in other states; such a request operates as a waiver of extradition and triggers certain deadlines by which the defendant must be tried or the charges dismissed. On May 19, pursuant to the defendant's request, he was removed to Michigan for trial there.

Two days before he departed, however, defendant's counsel appeared in the Denver court and the case was again continued until June 10, 1983. The court tendered to defense counsel on this occasion a speedy trial waiver form for the defendant's signature. At this hearing, certain matters were discussed by counsel and the court, but the written summary of this hearing contains no mention that the court or district attorney were advised of defendant's imminent departure to Michigan. In fact, the record shows that even defendant's attorney was unaware at this point that the defendant planned to depart for Michigan. The summary does not contain any indication that the court was notified that the defendant had undergone any change of mind about his tentative plea agreement or would demand speedy resolution of the Denver charges.

The written summary of the next hearing, more than a month later, on June 29, 1983, indicates that the sheriff's office advised the court that the defendant had been transferred to Michigan. The district attorney offered to try to locate the defendant in Michigan.

Later that summer, on August 9, 1983, defendant's counsel appeared before the court and waived on behalf of the defendant his speedy trial rights through February 8, 1984. Counsel frankly admitted that he had had no conversation or correspondence from the defendant in several months and that he had sent waiver forms for the defendant to sign on two occasions, but they had not been returned. Counsel told the court once again:

I can represent to the Court that it was my understanding, and again I have had no instructions to the contrary, that again there is strictly going to be a plea in this case. There is not going to be a trial of any sort to the best of my knowledge; we are merely waiting for ... the appeal that's presently pending before the [supreme court].

The trial court accepted this waiver and ordered that an alias capias issue for the defendant as a detainer and that the defendant be brought back to court forthwith upon his return to Colorado.

On December 17, 1983, the defendant was returned to Colorado from Michigan. On December 28, 1983, he was brought back to the Denver court. On this occasion, defendant tendered a *pro se* motion to dismiss the charges against him based on an alleged failure by Colorado prison officials to promptly notify him of the Denver charges against him after they became aware of the charges in late 1982 or early 1983. The record contains no explanation for this surprising motion in light of the continual and long-standing representations by the defendant that he would enter the plea agreement. Defense counsel apparently indicated that he could not partake in arguing this motion. Defense counsel also informed the court that the defendant would seek another continuance if the motion were denied. The trial court indicated it would refuse such a continuance and set January 16, 1984, as the date for jury trial. The court ruled at this point that the speedy trial deadline would run on February 8, 1984.

On January 10, 1984, a hearing was held on defendant's motion to dismiss, at which the defendant argued, on his own behalf, why provisions of the Uniform Mandatory Disposition of Detainers Act (Detainers Act), §§ 16–14–101 *et seq.*, 8 C.R.S. (1978), required dismissal of the charges. The trial court agreed, and granted defendant's *pro se* motion. Thereafter, the People appealed, and on June 24, 1985, we reversed the trial court's decision and remanded the case with instructions to reinstate the charges against the defendant. *People v. Yellen*, 704 P.2d 306 (Colo.), *cert. denied,* —— U.S. ——, 106 S.Ct. 603, 88 L.Ed.2d 582 (1985). Subsequently, the defendant's petition for a writ of certiorari from the United States Supreme Court was denied, and our mandate of reversal issued on October 17, 1985. It was received by the Denver court the next day.

On November 7, 1985, the defendant and his counsel appeared in court again. A transcript of the hearing indicates that at this point defendant was clearly contemplating taking the matter to trial—even though by this date we had decided the defendant's Arapahoe County habeas corpus appeal. *See Yellen v. Nelson*, 680 P.2d 234 (Colo.1984). Defense counsel informed the court of various motions to be filed, and the court set a hearing for November 19 on a renewed motion by the defendant for dismissal. Counsel and the court discussed when the 90–day deadline for trial under provisions of the Detainers Act would expire, and the court set a trial date of December 9, which all parties appeared to agree would be within the 90–day time limit. The six-month speedy trial provisions in section 18–1–405, 8 C.R.S. (1978), were referred to, but apparently no one believed that those provisions would be violated by the December 9 trial date, and there was no explicit discussion of the applicable deadline under that statute.

On November 19, 1985, another hearing was held, and defendant's renewed motion to dismiss was denied by the trial court. Subsequently, the defendant sought a writ of prohibition and mandamus from this court to review that decision, but we denied his request on November 27, 1985.

At the November 19 hearing, the defendant, speaking again on his own behalf, also raised a question concerning his speedy-trial rights under section 18–1–405. The court, counsel and defendant discussed the matter and expressed various views, but it is evident from the record that there was considerable confusion due to the lengthy and convoluted history of the proceedings. The court requested the defendant to provide written clarification of his position, which the defendant provided by means of another motion to dismiss.

## TRIAL COURT RULING

On January 6, 1986, after a hearing, the trial court granted this motion to dismiss. During this hearing, the defendant contested the validity of the August 9, 1983, waiver of his speedy trial rights by his attorney—a waiver that had apparently been made without his explicit consent because the defendant was then in Michigan. The trial court, however, held that the waiver by defendant's attorney was valid.

The trial court also held that the defendant's request for speedy disposition of the Michigan charges, and his subsequent removal to Michigan between May 19, 1983, and December 17, 1983, did not toll the running of the statutory period. Therefore, the court found that the period between August 9, 1983, when the last waiver was made, and January 10, 1984, when the case was initially dismissed, consumed all but 30 days of the six-month period.

The court further held that the statutory period was tolled between January 10, 1984, and October 18, 1985, while the case was on appeal to this court. However, the court concluded that the remaining 30 days on the speedy trial clock expired on November 18, 1985—31 days after our mandate of reversal was received in the district court. Consequently, the court held, since the defendant's trial had not been initiated by November 18, the case had to be dismissed.

The People now contend that the district court erred in holding that the defendant's request for speedy disposition of the Michigan detainer did not toll the statutory speedy trial period.

## II.

Colorado's speedy trial statute provides that, unless a person accused of a crime is brought to trial within six months of the date that the person enters a not guilty plea, the charges must be dismissed. § 18–1–405, 8 C.R.S. (1978). The statute is designed to render more effective a defendant's right to a speedy trial guaranteed by article II, section 16 of the Colorado Constitution and the sixth amendment of the United States Constitution. *People v. Sanchez*, 649 P.2d 1049, 1052 (Colo.1982). In this respect, it serves both the public interest and the interest of the accused by requiring an expeditious determination of guilt or innocence so that the guilty can be sentenced and the innocent exonerated. *People v. Martin*, 732 P.2d 1210, 1213 (Colo.1987).[1]

The statute, however, also recognizes a countervailing interest in effective enforcement of the criminal laws. Thus, it provides that periods of delay for specified reasons that should not be attributed to the People are to be excluded in calculating whether the six-month period has expired. For our purposes here, the relevant provision states:

(6) In computing the time within which a defendant shall be brought to trial as provided in subsection (1) of this section, the following periods of time shall be excluded:

. . . .

(d) The period of delay resulting from the voluntary absence or unavailability of the defendant; however, a defendant shall be considered unavailable whenever his whereabouts are known but his presence for trial cannot be obtained, or he resists being returned to the state for trial.

§ 18–1–405, 8 C.R.S. (1986).

We have applied this exception to exclude from the statutory period delays re-

---

1. Defendant's brief contains certain arguments concerning his constitutional right to a speedy trial. Our examination of the record persuades us, however, that this issue was not presented to, or decided by, the trial court. Therefore, the issue is not properly before us.

sulting from a defendant's extradition to another state for criminal proceedings. In *People v. Moye*, 635 P.2d 194 (Colo.1981), the defendant had pleaded not guilty to charges in Jefferson County. Prior to trial, however, the defendant was arrested by Denver police pursuant to an Idaho extradition warrant. The defendant unsuccessfully contested his extradition. However, until the night before his extradition, Denver authorities were not aware of the outstanding Jefferson County charges, and the Jefferson County district attorney was not aware of the defendant's pending extradition. Later, when the statutory speedy trial period expired, the defendant was apparently still in Idaho. We concluded, however, that the delay attributable to the defendant's extradition was to be classified as the voluntary absence or unavailability of the defendant, thus tolling the running of the statutory period. We noted in particular that this result was justified because the defendant's failure to disclose his whereabouts effectively precluded the Jefferson County district attorney from objecting to his extradition. The analogies to this case are quite close.

The defendant, however, contends that the court of appeals' decision in *People v. Wimer*, 43 Colo.App. 237, 604 P.2d 1183 (1979), is controlling in this case. In *Wimer*, the court of appeals held that the delay caused by a defendant's waiver of extradition could not be deemed a result of the voluntary absence or unavailability of the defendant. In *Wimer*, however, the prosecuting authorities were aware of the pending extradition proceedings, but the record in that case disclosed no evidence of efforts on their part to intervene in the proceedings. Instead, California authorities agreed to return the defendant prior to the expiration of the Colorado speedy trial period and were permitted to remove him from the state. In those circumstances, the court of appeals apparently concluded that it would be unjust to attribute to the de-

fendant the delay caused by the extradition.

The decisions in *Wimer* and *Moye* vividly demonstrate that speedy trial determinations under the statute are to be made with a close consideration of the facts of each case. We have said before that, "Where the question is what period of delay should be excused on the basis that it is the result of the defendant's voluntary unavailability, the determination will necessarily be highly dependent upon the facts of each case." *People v. Sanchez*, 649 P.2d 1049, 1051–52 (Colo.1982). We have also emphasized that the statute should not be applied in a wooden or mechanistic fashion, *People v. Martin*, 732 P.2d 1210, 1214 (Colo.1987); *Sanchez*, 649 P.2d at 1052; and that in interpreting the statute, it must be kept in mind that a "just result is intended." *Moye*, 635 P.2d at 195; *see also Sanchez*, 649 P.2d at 1052. The fundamental purpose of the statute is to prevent unnecessary prosecutorial and judicial delays to a pending criminal proceeding. *Moye*, 635 P.2d at 195.

Here, we have set forth the facts in great detail in order to examine the validity of defendant's claim that his speedy trial rights have been violated. We do not agree with the defendant that the purpose of the statute is served by attributing the delay in this case to the People, nor do we believe the trial court reached a "just result" by dismissing these charges.[2]

We are satisfied that the actions of the defendant in this case—like those of the defendant in *Moye*—effectively precluded the Denver authorities from objecting to his removal from the state. Moreover, we do not believe the People's actions were less than diligent. *E.g., Watson v. People*, 700 P.2d 544 (Colo.1985). We note that once the defendant was in Michigan, under the terms of the Interstate Agreement on Detainers, he could not be returned to Colorado prior to trial of the Michigan case unless Michigan authorities were willing to dismiss the charges against him. *See*

---

**2.** We note that the delay in this case may actually have benefited the defendant. For example, a motion filed by the defendant in November 1985 in anticipation of trial contended that the

defendant was entitled to an identification lineup in part because of the length of time since the commission of the crime.

§ 24–60–501, Arts. III(d), IV(e), 10 C.R.S. (1982); Mich.Stat.Ann. § 4.147(1), Arts. III(d), IV(e) [M.C.L.A. § 780.601, Arts. III(d), IV(e)] (Callaghan 1985).

Defendant argues, however, that our decision would force prisoners to forfeit their speedy trial rights in one state in order to claim their speedy trial rights in another. We disagree. Our interpretation of the Colorado statute, of course, does not abrogate a criminal defendant's constitutional right to a speedy trial. *E.g., People v. Jamerson*, 198 Colo. 92, 596 P.2d 764 (1982). Moreover, we have pointed out that the interpretation of the statute requires a close evaluation of the facts in each individual case. We are simply not convinced that in every case—and in this case in particular—that a defendant should be permitted to pit state against state in an effort to run time off two speedy trial clocks at once with the likely assurance that one will expire.

Defendant also argues that his return to Colorado by Michigan authorities prior to expiration of the six-month speedy trial period in Colorado mandates a conclusion that he was not unavailable under the tolling provision of the statute. We disagree again. The issue in this case is not whether the defendant was voluntarily absent or unavailable for trial after he was returned from Michigan. The issue is whether he was voluntarily absent or unavailable, and the statute was tolled, while he was gone. We conclude that he was.

Additionally, we note that on remand the People will be entitled to credit for a reasonable period of time following the defendant's unavailability in order to reschedule the case and prepare for trial. *People v. Martin*, 732 P.2d 1210 (Colo.1987). And, of course, the time spent on this appeal does not count toward the statutory period. *People v. Moye*, 635 P.2d 194, 197 (Colo. 1981); *Jamerson*, 198 Colo. at 95–96, 596 P.2d at 766–67 (1979).

Because we conclude the statute was tolled by the defendant's unavailability in this case, we need not reach the People's second argument that the defendant waived his speedy trial rights by acceding to the setting of a trial date outside the statutory period without objection at the November 9, 1985, hearing. The recalculation necessitated by our decision on the first issue will reflect that the December 9, 1985, trial date was not outside the statutory period.

Accordingly, we reverse and remand with instructions that the district court reinstate the charges against the defendant.