{¶ 61} I respectfully dissent. I would conclude that the pre-indictment delay in this matter was due to defendant's flight and the multiplicity of other charges lodged against him and was neither unjustifiable nor calculated to gain a tactical advantage over defendant. I would further conclude that the issue of withheld exculpatory evidence was addressed and remedied within the prior proceedings granting defendant a new trial, and the law of the case therefore dictates that a new trial and not dismissal is the proper remedy for that violation of defendant's rights. I would therefore reverse and remand for further proceedings.
 {¶ 62} This matter arises from defendant's indictment for the May 1981 aggravated murder of Lawrence Botnick and the attempted murder of Botnick's son, Bruce, during a robbery of the Botnick's pawnshop. The Cuyahoga County Grand Jury returned an indictment for aggravated murder, attempted murder, and aggravated robbery against Wendell Johnson, Monika Henderson, and "Road Dog" — "RNU" — (real name unknown).
 {¶ 63} The record further reflects that defendant fled to Colorado and began using the alias "Seth Yellen." See State v.Larkins (Oct. 8, 1977), Cuyahoga App. Nos. 52779 and 52780. On July 15, 1981, defendant was charged with aggravated robbery and violent crime in Denver District Court in Colorado. See Peoplev. Yellen (1987), 739 P.2d 1384. He was also charged in a separate matter in Arapahoe County District Court in Colorado. Id. Defendant failed to appear in court on April 12, 1982, and the Denver District Court issued an Alias Capias. Id.
 {¶ 64} On May 14, 1982, defendant was arrested as a fugitive in Wilkinson County, Mississippi. Yellen v. Nelson (1984),680 P.2d 234. Defendant was returned to Colorado on August 15, 1982. Id.
 {¶ 65} On June 29, 1982, Cuyahoga County officials sent a detainer to Wilkinson County, Mississippi and Arapahoe County, Colorado for defendant.
 {¶ 66} On October 22, 1982, defendant was served with a warrant for his arrest on extradition charges in connection with the instant (Ohio) offenses. Yellen v. Cooper (1986),713 P.2d 925. In November, 1983, defendant was sentenced to the custody of the Colorado Department of Correction and the extradition case was dismissed on motion of the Colorado authorities. Id. On December 17, 1982, a detainer based on the Ohio charges was filed against defendant. Id.
 {¶ 67} On May 19, 1983, while awaiting trial on the Colorado charges, defendant was released to the custody of the State of Michigan pursuant to a detainer request. People v. Yellen
(1985), 704 P.2d. 306. While he was in Michigan, a detainer issued by the Denver District Court was lodged at the Department of Corrections on August 19, 1983. Id. On December 17, 1983, defendant was returned to Colorado from Michigan. Id.
 {¶ 68} Defendant was sentenced to eight years in the Arapahoe County case and a report indicating that defendant refused to cooperate with the probation department was filed with that court. He requested numerous continuances in the Denver matter, however. People v. Yellen (1987), 739 P.2d 1384.
 {¶ 69} On April 22, 1983, defendant requested speedy disposition of charges lodged against him in Michigan and approximately one month later, pursuant to the defendant's request, he was removed to Michigan for trial there. Id. Ohio again initiated detainer proceedings against defendant in 1983 but this matter was continued because defendant was in Michigan at this time. Yellen v. Cooper (1986), 713 P.2d 925.
 {¶ 70} On December 17, 1983, he was returned to Colorado from Michigan. People v. Yellen (1987), 739 P.2d 1384.
 {¶ 71} In March 1984, Ohio authorities again requested temporary custody of defendant in connection with the instant offenses. Yellen v. Cooper (1986), 713 P.2d 925. Defendant filed a writ of habeas corpus contesting the Ohio proceedings in which he asserted, inter alia, that the People failed to establish that he is the fugitive sought by Ohio. Id. The district Court denied the relief and on direct appeal to the Supreme Court of Colorado, that court affirmed in 1986. Id.
 {¶ 72} The grand jury returned a new indictment in 1986 against Larkins for the three crimes. Thereafter, according to our previous decision in State v. Larkins (Nov. 10, 1993), Cuyahoga App. Nos. 63760, 63761, the following transpired:
 {¶ 73} "[Larkins] was extradited to Ohio in August, 1986. He was indicted as "Ronald Larkins" in Case No. 212083.
 {¶ 74} "Case No. 212083 was merged into Case No. 166827 on September 29, 1986.
 {¶ 75} "[Larkins] waived his right to a jury trial, and a bench trial commenced on September 29, 1986.
 {¶ 76} "On October 1, 1986, Larkins was found guilty of count one, aggravated murder (R.C. 2903.01); count two, aggravated robbery (R.C. 2911.01); and count three, attempted murder (R.C.2903.02, 2923.02).
 {¶ 77} "Larkins was sentenced in accordance with law on October 1, 1986.
 {¶ 78} "[Larkins'] judgment of conviction was affirmed by the Court of Appeals. State v. Larkins (Oct. 8, 1987), Cuy. App. Nos. 52779 and 52780.
 {¶ 79} "The Supreme Court of Ohio denied petitioner's motion for leave to appeal on January 27, 1988."
 {¶ 80} See State v. Larkins (Nov. 10, 1993), Cuyahoga App. Nos. 63760, 63761.
 {¶ 81} Following his conviction, Larkins filed a writ of mandamus in 1992, seeking all records, including investigative records, under his name which related to the robbery and shooting at the pawnshop. Because he was incarcerated, defendant appointed a designee to receive the records. This court dismissed the petition, concluding that defendant had no right to appoint a designee. The Ohio Supreme Court affirmed this court's decision, on other grounds, in State ex rel. Steckman v. Jackson (1994),70 Ohio St.3d 420, 639 N.E.2d 83. The Supreme Court held that the records sought by defendant are exempt from disclosure based upon the work-product exception to R.C. 149.43(A)(2)(c).
 {¶ 82} The record further discloses that in 1995, defendant sought habeas corpus relief, contending that the trial court failed to strictly comply with R.C. 2925.05 since the written jury waiver was placed in the court's file but not file-stamped. The Fifth District Court of Appeals granted the writ. See Stateex rel. Larkins v. Baker (Jan. 18, 1995), Richland App. No. 94 CA 83. The Supreme Court reversed, concluding that no jurisdictional defect had occurred and that the matter could have been raised on direct appeal. See State. ex rel. Larkins v.Baker (1995), 73 Ohio St.3d 658, 659, 653 N.E.2d 701. Defendant then sought a writ of mandamus to compel the trial judge to vacate his convictions, claiming that the judge was without jurisdiction to try him because his written jury waiver form was not file-stamped by the clerk of court. This court denied the writ. See State ex rel. Larkins v. Aurelius (June 18, 1998), Cuyahoga App. No. 74115.
 {¶ 83} Thereafter,
 {¶ 84} "In 1999, Bishop Alfred Nickles of Cincinnati filed a public records request with the Cleveland Police Department, seeking the same police reports previously denied to Larkins. Without any objection by the prosecutor's office, the Cleveland Police Department gave him the documents. Bishop Nickles forwarded the records to Larkins, who in turn, sought leave to file a motion for a new trial.
 {¶ 85} "The police records revealed that: 1) the description of the robbers given by eyewitnesses did not match Larkins; 2) a description of `Road Dog,' the second shooter, given by potential suspect Todd Hicks did not match Larkins; 3) the police relied on a confidential informant; 4) a witness, Sonja Belcher, who was present when the robbery was planned, did not identify Larkins as one of the planners, and said she saw both robbers after it was known Larkins left town; 5) Henderson named Larkins only after the police told her that Larkins was known by the nickname, "Road Dog;" and 6) Henderson lied on the stand concerning her past criminal convictions. Moreover, it was also discovered that Henderson lied when asked whether the State had promised her anything in exchange for her testimony. Although Henderson claimed she was testifying without any promises from the State, Assistant Prosecutor Marino wrote a letter on her behalf to the parole board, indicating that he promised her that he "would do everything possible to help her get off parole" because she was initially reluctant to return to Ohio to testify at trial.
 {¶ 86} "After conducting a hearing on the matter,[1]
the trial court granted Larkins' motion for a new trial. The trial court concluded that the exculpatory evidence in the prosecution's possession which was never turned over to Larkins, warranted a new trial pursuant to the United States Supreme Court decision in Brady v. Maryland (1963), 373 U.S. 83,10 L.Ed.2d 215, 83 S.Ct. 1194."
 {¶ 87} See State v. Larkins, Cuyahoga App. No. 82325,2003-Ohio-5928.
 {¶ 88} The State of Ohio appealed the order for a new trial, complaining that information not subject to disclosure under Crim.R. 16 cannot be obtained through a public records request, and that Larkins knew of the evidence at the time of trial. This court affirmed the order for a new trial. In relevant part, this court stated:
 {¶ 89} "Here, Larkins lawfully obtained the police records. * * * [T]he trial court properly allowed Larkins to rely on information contained in the police records which constituted exculpatory evidence. Furthermore, the trial court correctly recognized that `exculpatory evidence is always discoverable.'"State v. Larkins, Cuyahoga App. No. 82325, 2003-Ohio-5928. Finally, this court noted that the net effect of the evidence was sufficiently material to justify a new trial. Id.
 {¶ 90} Following our 2003 decision affirming the grant of a new trial, defendant's counsel moved to dismiss the indictments. The grounds offered in support of the motion were: (1) pre-indictment delay from 1981 to 1986; and (2) that the state failed to provide defendant with exculpatory evidence, i.e., the basis upon which this court had previously affirmed the trial court's decision granting defendant a new trial.
 {¶ 91} The trial court subsequently dismissed the indictments and stated:
 {¶ 92} "The Court finds that there was a pre-indictment delay of some five (5) years during which time at least two (2) key witnesses died. No explanation has been offered for this delay. While defendant did fight extradition for two years (1984-1986) it would appear from the documents appended to the State's pleadings, that the basis of his contention was that he was not the "Road Dog" named in the Ohio indictment. That has been defendant's position throughout this matter and an attempt to vindicate that position is, in fact, at the heart of these entire proceedings.
 {¶ 93} "Finally, and perhaps most importantly to this Court, the defendant has been trying at least since 1994 to obtain the exculpatory evidence in possession of the State. * * *
 {¶ 94} "The issue hence becomes: when the State purposely secrets exculpatory evidence from a defendant resulting in a `verdict unworthy of confidence' and then actively seeks to conceal that evidence for a period of years, and as a result numerous witnesses are deceased or unable-to-be-located, is dismissal the appropriate remedy?
 {¶ 95} "* * *
 {¶ 96} "It is clear that the passage of time has gravely prejudiced the defendant. Whether this is denominated as a Speedy trial Violation, a Due Process Violation, a Confrontation Clause Violation, a Fair Trial Violation, a Brady Violation, or a double jeopardy issue, the fact clearly remains that the defendant cannot now in 2004-2005, receive the fair trial to which he is entitled." See State v. Larkins (Dec. 29, 2004 Judgment Entry), Common Pleas Case No. 166827.
 {¶ 97} I would conclude that dismissal was not warranted because the record clearly outlines a justifiable reason for the pre-indictment delay, and because the failure to provide exculpatory evidence was addressed within the prior proceedings which ordered that defendant be given a new trial.
 {¶ 98} With regard to the issue of the pre-indictment delay, it must be noted that defendant did not raise the issue of the pre-indictment delay prior to the 1986 trial. See State v.Larkins (Oct. 8, 1987), Cuy. App. Nos. 52779 and 52780. His failure to challenge the pre-indictment delay in his direct appeal bars any complaint now. State v. Crim, Cuyahoga App. No. 85290, 2005-Ohio-4129, citing State v. Johnson, Montgomery App. No. 20317, 2004-Ohio-6228 and State v. Scuba, Geauga App. No. 2000-G-2308, 2002-Ohio-1446.
 {¶ 99} Further, the test for preindictment delay, as held by the Supreme Court of Ohio in State v. Walls, 96 Ohio St.3d 437,2002-Ohio-5059, 775 N.E.2d 829, is as follows:
 {¶ 100} "To warrant dismissal on the basis of preindictment delay, a defendant must present evidence establishing substantial prejudice. Once the defendant fulfills that burden, the state has the burden of producing evidence of a justifiable reason for the delay." See, also, State v. Gooden, Cuyahoga App. No. 81320, 2003-Ohio-2864; State v. Whiting (1998), 84 Ohio St.3d 215,217, 1998-Ohio-575, 702 N.E.2d 1199. "Thus, `the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused.'" State v. Walls, supra, quotingUnited States v. Lovasco (1977), 431 U.S. 783, 790,52 L. Ed.2d 752, 97 S.Ct. 2044.
 {¶ 101} In this matter, defendant claims that he has suffered prejudice and moved for dismissal based upon pre-indictment delay, but he offers no evidence of prejudice from the pre-indictment time period, i.e., 1981-1986. He also asserts that the state "inexplicably waited until 1986 to formally charge Larkins." I cannot accept this contention in light of the proceedings described in the discussion of the multi-state litigation involving this defendant and his use of at least one other name. Rather:
 {¶ 102} "Appellant's choice to leave the state and use a different name so close in time to the murder can reasonably be seen as an attempt to avoid prosecution, and not a coincidence. Thus, I am unable to conclude that an unreasonable delay between the murder and appellant's indictment (and subsequent trial) was caused by appellant's own actions. Thus, any delay between the murder and appellant's indictment (and subsequent trial) was caused by appellant's own actions."
State v. McClutchen, Cuyahoga App. No. 81821, 2003-Ohio-4802.
 {¶ 103} Further, I would conclude that the failure to provide exculpatory evidence was previously addressed in the proceedings in which defendant sought, and was granted a new trial. Therefore, a new trial, and not a dismissal, is the remedy to be imposed under the law of the case.
 {¶ 104} As to this issue, defendant insists that the trial court did not disregard the mandate of this court, and did not violate the doctrine of the law of the case. He claims that this court "was never faced with the issue of whether a retrial would be fair or whether dismissal was appropriate[.]"
 {¶ 105} In State v. Cvijetinovic, Cuyahoga App. No. 82894, 2003 Ohio 7071, this court noted:
 {¶ 106} "The doctrine of the `law of the case' provides that a `decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels.'Nolan v. Nolan (1984), 11 Ohio St.3d 1, 3, 462 N.E.2d 410. The doctrine functions to compel trial judges to follow the mandates of reviewing courts. Id. When, at a rehearing after remand, a judge `is confronted with substantially the same facts and issues as were involved in the prior appeal, the [judge] is bound to adhere to the appellate court's determination of the applicable law.' Id. Absent extraordinary circumstances, such as an intervening decision by the Supreme Court, an inferior court has no discretion to disregard the mandate of a superior court in a prior appeal in the same case. Id. at syllabus. A judge iswithout authority to extend or vary the mandate given. Id. at 4. [Emphasis added.]"
Id., citing State v. Kincaid (Dec. 14, 2000), Cuyahoga App. No. 77645.
 {¶ 107} Similarly, in United States v. Burnette (6th Cir. 2001), 21 Fed. Appx. 382, the court noted that the court's power to reach a result "inconsistent with a prior decision reached in the same case is to be exercised very sparingly, and only under extraordinary conditions."
 {¶ 108} In this matter, the issue of the withheld discovery as well as the remedy for that violation were the subject of the prior proceedings during which defendant moved for a new trial. The trial court granted that motion and this court then affirmed the trial court's order. See State v. Larkins, Cuyahoga App. No. 82325, 2003-Ohio-5928. I therefore conclude that our prior proceedings constitute the law of the case as to this issue and the remedy which was to follow. Moreover, there were no extraordinary circumstances, such as an intervening decision by the Supreme Court, which could serve to justify the new remedy fashioned by the trial court following our 2003 decision.
 {¶ 109} Although defendant maintains that the Brady
violation was "persistent" and this justified the court's ruling, I cannot agree with this characterization of the record. Accordingly, I would hold that the trial court abused its discretion in fashioning a new remedy for the discovery violation, i.e., dismissal of the indictment, as the court did not have any authority to extend or vary this court's mandate in any way. State v. Cvijetinovic, supra.
 {¶ 110} Defendant lists numerous difficulties in defending this matter at this late date. He notes that witnesses have died or cannot be presently located. He also claims that various cases have "noted the practical impossibility of a new trial when the state has withheld material exculpatory evidence after the passage of a significant time" and cites to Jones v. Jago (6th Cir. 1978), 575 F.2d 1164; Watkins v. Miller (S.D. Ind. 2000),92 F. Supp. 2d 824, 832; Carter v. Rafferty (D.N.J. 1985),621 F. Supp. 533
 {¶ 111} In Jones v. Jago, supra, however, the court stated:
 {¶ 112} "We readily recognize the burden which this ruling places upon the State of Ohio, by requiring a new trial so long after the event. Nevertheless, we do not know how the principles enunciated in Brady and Agurs can be otherwise preserved."
 {¶ 113} Similarly in Watkins v. Miller, supra, the court stated:
 {¶ 114} "The writ will not prohibit the State of Indiana from taking steps to retry Watkins. Although the difficulties of doing so now — after the passage of time, after Ackeret has recanted his testimony, and after the DNA evidence has become available — are obvious, that is a decision for state authorities."
 {¶ 115} In Carter v. Rafferty, supra, the court stated:
 {¶ 116} "Yet, even though a new trial may very well be a practical impossibility, this is a decision that in the interests of comity should be made by the state."
 {¶ 117} Accordingly, I do not interpret these cases as creating a bar to retrial in this matter and this decision is to be made by the State of Ohio.
 {¶ 118} In accordance with all of the foregoing, I would reverse and remand this matter for further proceedings.
[1] The record indicates that the trial court granted defendant leave to file a motion for a new trial, following briefing and an evidentiary hearing, on November 8, 2000.