2014 COA 12

**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Farouk NAGI, Defendant–Appellant.**

**Court of Appeals No. 12CA0004**

Colorado Court of Appeals,
Div. II.

Announced February 13, 2014

John W. Suthers, Attorney General, Susan E. Friedman, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Michael J. Heaphy, P.C., Michael J. Heaphy, Vail, Colorado, for Defendant–Appellant.

Opinion by JUDGE CASEBOLT

¶1 Defendant, Farouk Nagi, appeals the judgment of conviction entered on a jury verdict finding him guilty of sexual assault on a child by one in a position of trust—pattern of abuse. He contends that the trial court violated his right to a speedy trial and incorrectly calculated the applicable sentencing range. We disagree and thus affirm.

## I. Background

¶2 On January 10, 2011, while represented by the public defender (original defense counsel), defendant pleaded not guilty to the charge of sexual assault on his stepdaughter while in a position of trust—pattern of abuse. The court set his trial for June 21, 2011, about twenty days before the expiration of the six-month speedy trial period set forth in section 18–1–405(1), C.R.S.2013.

¶3 In March 2011 defendant filed a pro se motion seeking to obtain a different attorney. While he was completely satisfied with original defense counsel's performance at the preliminary hearing, he asserted various reasons for the request; primarily, that counsel was not communicating with him. But following a hearing, the trial court found no conflict of interest or other just reason and declined to appoint a new public defender or alternate defense counsel (ADC).

¶4 On June 1, 2011, original defense counsel filed a motion to continue the case, asserting that he needed additional time to investigate out-of-state witnesses and some witnesses in Yemen, defendant's native country. Counsel also stated that he did not believe he could effectively represent defendant without conducting the additional investigation. Defendant vehemently objected to any continuance, asserted his right to a speedy trial, and indicated that he wished to have ADC appointed to represent him.

¶5 The trial court conducted an extensive inquiry concerning defendant's relationship with original defense counsel, eventually asking defendant whether, if the court appointed

ADC and the ADC attorney was not in a position to go to trial on June 21, he would agree to waive his speedy trial right and would consent to reset the trial. Defendant agreed with that proposition. The court scheduled another hearing for June 6.

¶ 6 On June 6, defendant appeared with ADC present, but without original defense counsel. Defendant initially told the court that he did not wish to have ADC appointed, but desired to represent himself. He then abruptly changed his mind and asked to retain original defense counsel "as long as I don't waive my constitutional right to speedy trial." The court pointed out that original defense counsel had filed a motion to continue the trial, which would require a speedy trial waiver. Defendant stated that he would not want original defense counsel if that attorney still wanted a continuance; if the attorney would not withdraw the continuance request, he would proceed pro se.

¶ 7 The court then gave defendant an *Arguello* advisement concerning his right to self-representation. *See People v. Arguello*, 772 P.2d 87, 94–95 (Colo.1989) (setting forth criteria to employ in determining whether a defendant has made a voluntary, knowing, and intelligent waiver of his right to counsel). The court also offered to appoint ADC, but pointed out that ADC would not be in a position to represent defendant at a trial on June 21. The ADC attorney confirmed that assertion.

¶ 8 Defendant declined the offer, and stated that he wanted original defense counsel to appear with him on June 21 to see if that attorney would withdraw his request for continuance and could effectively represent him. The court stated that, unless original defense counsel appeared, withdrew the continuance request, and stated that he could provide effective representation, defendant would represent himself at trial, to which defendant agreed. The court set another hearing for June 20.

¶ 9 On that date, the court inquired whether defendant still wanted to represent himself, and when defendant replied affirmatively, the court vacated the trial date and ordered defendant to undergo a competency evaluation. On June 21, the court advised defendant concerning his rights and ordered the evaluation to occur at the Colorado Mental Health Institute in Pueblo (CMHIP).

¶ 10 The CMHIP determined that defendant was competent to proceed. The parties did not contest that evaluation and, at a hearing on August 22, 2011, the trial court found that defendant was competent to proceed to trial. Defendant represented himself at the trial that started on August 30, 2011. The jury convicted him as charged, and the trial court sentenced him to an indeterminate term of twelve years to life.

## II. Speedy Trial

¶ 11 Defendant contends that his right to a speedy trial was violated because the competency evaluation was unfounded and, therefore, the period during which his competency was being evaluated should not have been excluded from the six-month speedy trial period. We disagree.

### A. Standard of Review and Legal Authority

¶ 12 The application of the speedy trial statute to undisputed facts presents a question of law that we review de novo. *See People v. Walker*, 252 P.3d 551, 552 (Colo. App.2011).

¶ 13 A defendant must be brought to trial within six months of entering a not guilty plea. § 18–1–405(1). As relevant here, any period during which a defendant is under examination with respect to his or her competency is excluded from the six-month period. § 18–1–405(6)(a).

¶ 14 If a court has "reason to believe" that a criminal defendant is "incompetent to proceed," the court must suspend the proceedings and determine competency. § 16–8.5–102(2)(a), C.R.S.2013. " 'Incompetent to proceed' " means that

as a result of a mental disability or developmental disability, the defendant does not have sufficient present ability to consult with the defendant's lawyer with a reasonable degree of rational understanding in order to assist in the defense, or that, as a result of a mental disability or develop-

mental disability, the defendant does not have a rational and factual understanding of the criminal proceedings.

§ 16–8.5–101(11), C.R.S.2013.

¶ 15 While section 16–8.5–101, C.R.S. 2013, does not contain a definition of "reason to believe," and "there is no definitive constitutional standard with respect to the nature and quantum of evidence necessary to require resort to an adequate procedure for determining competency," *Cappelli v. Demlow*, 935 P.2d 57, 62 (Colo.App.1996), it is clear that a trial court has a "duty to suspend the proceedings ... even if no more than a 'doubt' is entertained as to a defendant's competency," *People v. Scherrer*, 670 P.2d 18, 20 (Colo.App.1983) (some internal quotation marks omitted). Hence, the standard of "reason to believe" presents a low threshold. *Cappelli*, 935 P.2d at 62. As to what may trigger a doubt concerning competency, the division in *Cappelli* stated:

> A defendant's irrational behavior or his or her demeanor at a hearing or trial may be sufficient, of themselves, to require an evaluation. There are no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated.

*Id.*

¶ 16 This low threshold is justified in light of the due process interests of the accused that are at stake. One purpose of section 16–8.5–102 is to ensure against a violation of due process that would arise if a defendant who is not mentally competent were required to stand trial or participate in other critical criminal procedures. *See Cappelli*, 935 P.2d at 61–62; *see also Drope v. Missouri*, 420 U.S. 162, 171–72, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975) (putting an accused on trial while he or she is incompetent violates due process of law); *People v. Zapotocky*, 869 P.2d 1234, 1237 (Colo.1994) (same).

¶ 17 In addition, a criminal defendant may not waive the right to counsel unless he or she does so competently and intelligently. *Godinez v. Moran*, 509 U.S.

389, 396, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993). A defendant is competent to waive the constitutional right to counsel if the defendant (1) is able to consult with his lawyer with a reasonable degree of rational understanding and (2) has a rational and factual understanding of the proceedings. *Id.* In other words, a defendant must have a factual understanding of the proceedings; he must be properly oriented as to time, place, and person; and his perceptions and understandings must be rational and grounded in reality. *People v. Mondragon*, 217 P.3d 936, 940 (Colo.App.2009).

¶ 18 We review a trial court's order for a competency evaluation for an abuse of discretion. *Cf. People v. Price*, 240 P.3d 557, 561–63 (Colo.App.2010) (trial court's determination not to suspend the proceedings and order a competency evaluation reviewed for abuse of discretion). "A court abuses its discretion when it renders a decision that is manifestly arbitrary, unreasonable, or unfair." *People v. Luman*, 994 P.2d 432, 435 (Colo.App.1999).

### B. Analysis

¶ 19 Here, on June 20, the day before the scheduled trial, the court vacated the trial and ordered defendant to undergo a competency evaluation. On June 21, during an advisement to defendant about his rights concerning the evaluation, the court stated its reasons for doing so:

> The Court has had some hearings on this case over the last couple of weeks. [Defendant] indicated to the Court, we had discussion[s] on June 6th, maybe the week before that he wanted to represent himself in this matter. The Court's concern, frankly, [defendant], based on the statements that you've made to me[,] that you're not making good decisions; that the fact that you would want to represent yourself in a case that the consequences to you can be an indeterminate life sentence with no legal training at all raises a concern with the Court that you are not acting competently. I have a duty, sir, to suspend the proceedings and determine whether or not you are, in fact, competent

or incompetent if I have reason to believe that you are incompetent.

Again, based on *your actions* and *your decision making*, I am concerned that you are not acting competently at this time.

¶ 20 In our view, the record reveals ample grounds to support a "reason to believe" that defendant might have been incompetent to proceed and should have undergone a competency determination. Specifically, the following are germane:

- In the hearing on June 1 in which the court addressed defense counsel's motion for a continuance to investigate out-of-state and foreign witnesses, defense counsel stated, "During conversations [with defendant] I have been accused of drinking and partying with [the prosecutor]. I have been accused of trying to use psychological tactics to get [defendant] to plead guilty. In essence being in align[ment] with the prosecution to assist them in convicting [defendant]."

- In the same hearing, defendant objected to the continuance, insisting on his speedy trial rights. Defendant stated, "I don't want to waive my right to speedy trial just based on whatever is going on in the head of [defense counsel] and [the prosecutor]. Your honor, I want to have my trial on June the 21st. I don't want a defense. I don't want him to go interview witness.... I'm just asking [defense counsel]; I'll be fine. I don't want any kind of defense plans.... I'll go through my trial on June the 21st. Whatever happens[,] happens. I accept what God has written for me. Everything has been written for me since I was born. So I can go to life sentence, that means I go to life sentence.... You know that I can sense—I can feel there are some instructions from the District Attorney's Office for [defense counsel] to give them extension. That's how I feel.... These are baseless charges. This is statements weren't written by my daughter. These statements were written by [a detective] and whoever people they were talking to my daughter. I can tell they are not her words. I don't know ... why I'm still

here. Just if it's going to, let's go to trial. If you send me to prison, life, whatever God has chose is going to get me out of this. You know, that's up to God."

....

"Trust me [defense counsel] will never complete his investigation. He will never complete his—I'm sorry to say, it's fake investigations. Your Honor, I am a Semitic person. I'm a Semite. I inherited inspiration in my veins. My forefather Abraham, David, Joseph, Mohammed, all of them are Semitic to one father. I always feel and say things."

- At the June 6 hearing, defendant vacillated between wanting to have original defense counsel represent him (which was contrary to his earlier views and agreement) and wanting to represent himself. He wanted original defense counsel to represent him "as long as I don't waive my constitutional right to speedy trial." But the court pointed out how that was inconsistent with his assertion of a right to a speedy trial. Defendant then stated he still wanted to see if original defense counsel could effectively represent him and would withdraw the request for continuance.

¶ 21 These actions and conflicting decisions of defendant are sufficient to justify the court's entertainment of a "doubt" concerning defendant's competency, *see Scherrer*, 670 P.2d at 20, and meet the low "reason to believe" threshold. *See Cappelli*, 935 P.2d at 62. Even based on a cold record and lacking the trial court's ability to personally observe defendant's tone and demeanor, we conclude that the record supports the conclusion that defendant might not have been competent to proceed to trial. *See Morrow v. State*, 293 Md. 247, 443 A.2d 108, 113 (1982) ("[i]n our view the understanding required [for competency] is the nature of the charge, the facts required to be proved to sustain the charge, and *the consequences attending a conviction* for having committed the charge"); *State v. Coco*, 371 So.2d 803, 805 (La.1979) ("Pertinent inquiries to determine whether the accused can understand the proceedings against him include: ... his comprehension

of the range of possible verdicts and *of the consequences of conviction.*"). (Emphasis added.)

¶ 22 Defendant stated he was "mentally and psychologically unsettled" by some of defense counsel's explanations; he accused defense counsel of using psychological tactics and being in league with the prosecutor to induce him to plead guilty; he did not want any defense at all at his trial and was willing to risk a life sentence if God chose that for him; he believed the charges against him were baseless because the outcry statements were written by a detective, not his step-daughter (even though she had testified to the assaults at defendant's preliminary hearing several months earlier); he asserted that defense counsel was pursuing fake investigations and the prosecutor was instructing his counsel to seek a continuance; and he did not appear to comprehend why he would have to choose between representing himself and having his original defense counsel represent him.

¶ 23 Further, the circumstances reveal that defendant may not have had a rational and factual understanding of the proceedings against him because his perception that the prosecution had no case was not grounded in reality. *See* § 16-8.5-101(11) (defining competency to proceed as requiring a rational understanding of the criminal proceedings); *Mondragon*, 217 P.3d at 940 (noting that a defendant must have a rational understanding of the proceeding and his perceptions must be grounded in reality).

¶ 24 We are not persuaded by the dissent's view that the court ordered the competency evaluation *solely* because defendant exercised his right to represent himself. The court's comments at the June 21 hearing demonstrate that its order was based on defendant's statements made during hearings in the weeks before the trial, together with his actions and decisions. Among those actions were his conflicting and inconsistent positions regarding whether he wanted the public defender, ADC, or to proceed pro se; his decision to represent himself in the absence of legal training and while facing the possibility of an indeterminate sentence; and

his view that there was no substance to the prosecution's case.

¶ 25 We acknowledge the court's statement in the August 24 hearing that "the court's concern was that he wanted to represent himself in a case which, if convicted, would result in an indeterminate sentence. So the court did not feel that he was making good decisions." Even so, the court's statement should not be read in isolation, but in context with its recitations at the June 21 hearing referencing the court's prior hearings as well as defendant's previous pronouncements and actions.

¶ 26 For the above reasons, we conclude that the court's determination was not manifestly arbitrary, unreasonable, or unfair. *See Luman*, 994 P.2d at 435 (setting forth abuse of discretion standard); *see also Carrillo v. People*, 974 P.2d 478, 485–86 (Colo.1999) (the abuse of discretion standard is a "very high standard of review"); *People v. Milton*, 732 P.2d 1199, 1207 (Colo.1987) (discretion means the trial court "has the power to choose between two or more courses of action and is therefore not bound in all cases to select one over the other"). Rather than being arbitrary or unreasonable, the court's actions here reflect the exercise of judgment in favor of protecting defendant's right to due process and his right to counsel. In addition, they more than meet the low "reason to believe" threshold required by section 16-8.5-102(2)(a).

¶ 27 Because the court did not abuse its discretion in ordering defendant to undergo a competency evaluation, we also conclude that the period during which defendant was under observation should be excluded from the speedy trial computation. *See* § 18-1-405(6)(a) (any period during which a defendant is under examination with respect to his or her competency is excluded from the six-month speedy trial period). Excluding that period, defendant's trial occurred within the speedy trial limit.

### III. Sentencing

¶ 28 Defendant also contends that the trial court erred by aggravating the applicable sentencing range in accordance with the crime of violence and extraordinary risk

crime statutes because the prosecution failed to allege a crime of violence in a separate count of the information and to prove that he caused bodily injury to the victim or that he used threats, intimidation, or force against the victim. § 18–1.3–406(2)(b)(I), (5), C.R.S. 2013.

¶ 29 We conclude that defendant was subject to crime of violence sentencing because the offense of which he was convicted is a per se crime of violence. *See* § 18–3–405.3(4), C.R.S.2013 (a defendant convicted of a class three felony of sexual assault on a child—pattern of abuse, shall be sentenced in accordance with section 18–1.3–406, C.R.S. 2013); *People v. Banks*, 9 P.3d 1125, 1130 (Colo.2000) (when the statute defining an offense prescribes crime of violence sentencing for the offense by reference to section 18–1.3–406, the offense is called a per se crime of violence). Contrary to defendant's position, the prosecution was not required to prove a crime of violence in order to aggravate the sentencing range for a per se crime of violence in accordance with the crime of violence statute. *See People in Interest of A.B.-B.*, 215 P.3d 1205, 1208 (Colo.App.2009) (per se crimes of violence need not be defined by the crime of violence statute); *People v. Santana–Medrano*, 165 P.3d 804, 808 (Colo.App.2006) ("To support the imposition of enhanced punishment under [section 18–1.3–406] *when the underlying crime is not a per se crime of violence*, a separate count must be pled and proved to the jury beyond a reasonable doubt.") (emphasis added).

¶ 30 However, the People concede and we agree that the sentencing range should not have been aggravated as an extraordinary risk crime. *See People v. Banks*, 9 P.3d 1125, 1127 (Colo.2000). Nevertheless, defendant does not argue, nor do we perceive anything in the record to indicate, that the court's sentence would have been different had defendant been sentenced pursuant a sentencing range aggravated solely by the crime of violence statute. *See People v. Young*, 987 P.2d 889, 895 (Colo.App.1999). Defendant's twelve-year-to-life sentence in the DOC falls within both the correct sen-

tencing range and the incorrect sentencing range relied upon by the trial court.

¶ 31 The judgment is affirmed.

JUDGE DUNN concurs.

JUDGE LICHTENSTEIN dissents.

JUDGE LICHTENSTEIN dissenting.

¶ 32 The majority recognizes that a trial court has broad discretion in deciding whether to refer a defendant for a competency evaluation. I take no issue with this premise. But, I believe this discretion is limited by a defendant's constitutional right to self-representation.

¶ 33 In my view, the trial court here suspended the proceedings and referred defendant for a competency evaluation based on "the fact that [defendant] would want to represent [himself] in a case that the consequences to [him] can be an indeterminate life sentence with no legal training at all." This was error for two reasons. First, the court did not apply the applicable legal standard underlying a "reason to believe" a defendant should be referred for a competency evaluation. *See* §§ 16–8.5–101(11), –102(2)(a), C.R.S.2013. Second, its referral order also infringed on defendant's constitutional rights. Accordingly, I respectfully dissent.

¶ 34 I begin my analysis by discussing the applicable legal standards.

I. The Legal Standard of Incompetence and Statutory Provisions Governing a Referral for a Competency Evaluation

¶ 35 It is well established that subjecting an accused to trial when he or she is incompetent violates the defendant's constitutional right to due process. *Drope v. Missouri*, 420 U.S. 162, 172–73, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); *Jones v. Dist. Court*, 617 P.2d 803, 806 (Colo.1980). Our statutory procedures provide safeguards to ensure against the prosecution of an incompetent defendant. Section 16–8.5–102(2) provides that the issue of competency may be raised by defense counsel, the prosecutor, or the trial court. This statute requires the court to suspend criminal proceedings and determine the competency or incompetency of a defendant if it

"has reason to believe that the defendant is incompetent to proceed." § 16–8.5–102(2)(a); *see People v. Price*, 240 P.3d 557, 561 (Colo. App.2010). The court may either make a preliminary finding or order that the defendant be evaluated to determine whether the defendant is incompetent to proceed. § 16–8.5–103(2), C.R.S.2013.

¶ 36 The legislature has defined "incompetent to proceed" as follows:

"Incompetent to proceed" means that, as a result of a mental disability or developmental disability, the defendant does not have sufficient present ability to consult with the defendant's lawyer with a reasonable degree of rational understanding in order to assist in the defense, or that, as a result of a mental disability or developmental disability, the defendant does not have a rational and factual understanding of the criminal proceedings.

§ 16–8.5–101(11); *accord Dusky v. United States*, 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (articulating a similar standard).

¶ 37 The "reason to believe" threshold that triggers the need for further inquiry into a defendant's competence to proceed is a discretionary determination. *Cappelli v. Demlow*, 935 P.2d 57, 62 (Colo.App.1996). This is because the trial court has the opportunity to observe firsthand the defendant, and his or her actions and general demeanor. *People v. Bolton*, 859 P.2d 303, 307 (Colo.App.1993). But that discretion is not unbounded.

¶ 38 Although there is no definitive standard regarding the type or amount of evidence necessary to raise a doubt in the mind of a judge regarding a defendant's competency, *see Cappelli*, 935 P.2d at 62, it is clear from the competency statutes that a court's "reason to believe" that a defendant is "incompetent to proceed" must be based on whether a mental or developmental disability prevents a defendant from either (1) consulting with defense counsel with a reasonable degree of rational understanding in order to assist in the defense or (2) having a rational and factual understanding of the criminal proceedings. § 16–8.5–101(11) (defining "incompetent to proceed"). Consequently, a court's competency referral order that de-parts from this applicable legal standard will constitute an abuse of discretion. *See People v. Wilson*, 251 P.3d 507, 508 (Colo.App.2010).

¶ 39 In my view, the record does not support the court's referral order. *See, e.g., People v. Morino*, 743 P.2d 49, 52 (Colo.App. 1987) (looking to the record to determine whether there is support for the trial court's decision); *see also People v. Young*, 34 Cal.4th 1149, 24 Cal.Rptr.3d 112, 105 P.3d 487, 529 (2005) ("In resolving the question of whether, as a matter of law, the evidence raised a reasonable doubt as to defendant's mental competence, we may consider all the relevant facts in the record.").

## II. The Record Proceedings Leading to the Trial Court's Referral for Competency Evaluation

¶ 40 During the month prior to defendant's scheduled jury trial, the court held proceedings addressing defendant's dissatisfaction with defense counsel's request to continue the trial date beyond the six month speedy trial period in order to locate additional witnesses. Defendant explained that he was ready to proceed to trial without these witnesses; he distrusted his counsel's motivations for the continuance and wondered if the request was part of a "back door deal" with the prosecution. He also believed counsel would be unable to locate the witnesses defense counsel sought—especially since some of the witnesses were in the politically unstable country of Yemen. Defendant explained that he would release his attorney from any responsibility for not doing the additional investigation. He apologized for being forthright in referring to counsel's "defense plans" to investigate these additional witnesses as "fake investigations," but stated that, as a Semite, he tends to say what he feels. He emphasized that he wanted to preserve his right to speedy trial, as he had been in jail over the past eight months waiting for trial to finally proceed. He believed his attorney had already demonstrated the inconsistencies in the alleged victim's allegations against him (at the preliminary hearing) and the prosecution would not be able to meet its "beyond a reasonable doubt" burden at trial. But, he knew he risked receiving a life sentence, and

was willing to accept what "God has written for me," even if it meant that he would spend the rest of his life in prison.

¶ 41 When the court explained that it could grant defense counsel's request for a continuance over defendant's assertion of his speedy trial right, defendant weighed his options, which included (1) proceeding with alternate defense counsel, with whom he had no history of distrust (even if that meant resetting the trial beyond the speedy trial date); or (2) representing himself in order to preserve his original trial date. After initially wavering in this decision, defendant ultimately decided to proceed pro se.

¶ 42 The court then conducted an *Arguello* advisement, and defendant confirmed that he understood the possible penalties if convicted and the various consequences of his decision to represent himself. After conducting the advisement, the court did not indicate it had any concerns regarding defendant's competency to either waive counsel or to proceed to trial. To the contrary, it indicated it would allow defendant to proceed to trial on the originally scheduled date either (1) with defendant representing himself, if defense counsel was still unwilling to proceed on the original trial date; or (2) with defense counsel, if counsel appeared in court stating that he agreed to do so.

¶ 43 The day before defendant's scheduled trial, defense counsel did not appear. The court then asked defendant if he still wished to represent himself. Surprisingly, when defendant answered "Yes, sir," the court abruptly suspended the proceedings, vacated the trial date, and ordered a competency evaluation. The court explained that its order was based on defendant's desire to represent himself at trial:

> The [c]ourt has had some hearings on this case over the last couple of weeks. [Defendant] indicated to the [c]ourt, we had discussion[s] on June 6th, maybe the week before that, he wanted to represent himself in this matter. The [c]ourt's concern, frankly, [defendant], based on the statements that you've made to me that you're not making good decisions; that the fact that you would want to represent yourself in a case that the consequences to you can

be an indeterminate life sentence with no legal training at all raises a concern with the [c]ourt that you are not acting competently. I have a duty, sir, to suspend the proceedings and determine whether or not you are, in fact, competent or incompetent if I have reason to believe that you are incompetent.

> Again, based on your actions and your decision making, I am concerned that you are not acting competently at this time.

¶ 44 Defendant then underwent the evaluation, and was found competent to proceed. The evaluator noted that defendant's discussion of his case was "considered and reasonable," and, during their discussions, there was never "any indication of psychosis or other mental illness that influenced [defendant's] thinking."

¶ 45 After the parties did not dispute the finding of competence, defense counsel moved to dismiss the case for a violation of defendant's speedy trial right. In doing so, defense counsel challenged the court's order requiring defendant to undergo a competency evaluation as lacking a "legal-sound basis." The court again explained that its reason for the order was defendant's decision to represent himself:

> [T]he [c]ourt felt [a competency evaluation] was appropriate, based on what was being stated to the [c]ourt by [defendant]. The [c]ourt's concern was that he wanted to represent himself in a case, which, if convicted, would result in an indeterminate sentence. So the [c]ourt did not feel that he was making good decisions and felt it was appropriate to order a competency examination.

Based on these findings and this record, I conclude that the trial court's order was an abuse of discretion.

### III. The Trial Court's Order for Competency Evaluation was an Abuse of Discretion

¶ 46 Because the trial court did not base its order on the legal standard for competence, its order suspending the proceedings and directing defendant to undergo a competency evaluation constituted an abuse of dis-

cretion. *Wilson,* 251 P.3d at 508. Here, the trial court did not identify any concern that defendant lacked a rational and factual understanding of the proceedings against him or was unable to consult with counsel. To the contrary, the record shows that defendant had a rather sophisticated understanding of the proceedings. He identified the nature of the proceedings, potential trial strategies, his statutory and constitutional rights, and weighed his options and their consequences.

¶ 47 Not only did the order lack record support but, even more significant, the court's order also infringed on defendant's constitutional rights. *People v. Robles,* 302 P.3d 269, 273–74 (Colo.App.2011) (a decision that infringes on a defendant's constitutional rights is an abuse of discretion); *see also People v. Stephenson,* 165 P.3d 860, 866 (Colo.App.2007) (to show an abuse of discretion, a defendant must establish that under the circumstances the trial court's decision was manifestly arbitrary, unreasonable, or unfair).

¶ 48 Three separate times the court identified only one reason for its referral order: that defendant made bad decisions by waiving his right to counsel and choosing to represent himself at trial, without legal training, when he was facing an indeterminate sentence. This is not a proper basis for a competency referral order.

¶ 49 Understandably, here, the trial court believed that defendant's decision to represent himself was ill-advised because he faced an indeterminate life sentence if convicted.

¶ 50 But a defendant's ill-advised legal strategy is ordinarily not justification to question a defendant's competency. *See United States v. Perez,* 603 F.3d 44, 48 (D.C.Cir.2010) ("Although [the defendant] may have held dubious legal views and pursued an inadvisable strategy, none of this provided reasonable cause for the district court to question his competence to stand trial. As the Seventh Circuit has recognized, ' "persons of unquestioned competence have espoused ludicrous legal positions," but the articulation of unusual legal beliefs is a far cry from incompetence.' " (quoting *United States v. Alden,* 527 F.3d 653, 660 (7th Cir.

2008))); *Commonwealth v. Adkinson,* 80 Mass.App.Ct. 570, 954 N.E.2d 564, 579 (2011) ("[A] foolish or unsuccessful choice does not render [a defendant] incompetent."); *see also Commonwealth v. Robidoux,* 450 Mass. 144, 877 N.E.2d 232, 241 (2007) ("If we are to protect a defendant's autonomy to make decisions relating to his defense, the exercise of that autonomy cannot alone be grounds to doubt his competency." (citation omitted)).

¶ 51 Several state courts agree with this view. *See, e.g., Adkinson,* 954 N.E.2d at 579; *State v. Barton,* 108 Ohio St.3d 402, 844 N.E.2d 307, 316–17 (2006); *Baldwin v. State,* 227 S.W.3d 251, 254 (Tex.App.2007); *see also Agan v. State,* 503 So.2d 1254, 1256 (Fla. 1987) (rejecting an argument that "would require a competency inquiry in virtually every case in which an accused person makes a decision perceived by others as being unwise").

¶ 52 Not only is a defendant's ill-advised legal strategy improper grounds to support a "reason to believe" a defendant is incompetent to proceed, but, crucially, the decision here is one that is constitutionally guaranteed: criminal defendants have a constitutional right to represent themselves at trial. *See Faretta v. California,* 422 U.S. 806, 817, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *People v. Arguello,* 772 P.2d 87, 92 (Colo.1989).

¶ 53 Courts must respect that decision, no matter how ill-advised it may be. *See Faretta,* 422 U.S. at 834, 95 S.Ct. 2525 ("It is the defendant . . . who must be free personally to decide whether in his particular case counsel is to his advantage. And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of that respect for the individual which is the lifeblood of the law." (internal quotation marks omitted)); *see also People v. Bergerud,* 223 P.3d 686, 701 (Colo.2010) ("The wisdom or unwisdom of the defendant's choice does not diminish his right to make it." (internal quotation marks omitted)); *People v. Lucero,* 200 Colo. 335, 341, 615 P.2d 660, 664 (1980) (a defendant "is bound by his choices, however ill-advised they may be"); *Alongi v. Ricci,* 367 Fed.Appx. 341, 348 (3d Cir.2010) ("[A] defendant's request to waive the right

to counsel and proceed pro se cannot be denied because the court believes that the defendant's choice is ill-advised. Such a choice is almost always ill-advised.").

¶ 54 "It is well settled that a person should not be penalized for exercising a constitutional privilege." *People v. Pollard*, 2013 COA 31, ¶ 25, 307 P.3d 1124; *see also Chaffin v. Stynchcombe*, 412 U.S. 17, 32 n. 20, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973) ("[I]f the only objective of a state practice is to discourage the assertion of constitutional rights it is patently unconstitutional." (internal quotation marks omitted)); *Perry v. Sindermann*, 408 U.S. 593, 597, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) ("For if the government could deny a benefit to a person because of his [exercise of his] constitutionally protected [rights], his exercise of those freedoms would in effect be penalized and inhibited.... Such interference with constitutional rights is impermissible."); *In re Marriage of Ciesluk*, 113 P.3d 135, 142 (Colo.2005) (" '[A] legal rule that operates to chill the exercise of [a] right, absent a sufficient state interest to do so, is as impermissible as one that bans exercise of the right altogether.' " (quoting *Jaramillo v. Jaramillo*, 113 N.M. 57, 823 P.2d 299, 306 (1991))); *Apodaca v. People*, 712 P.2d 467, 473 (Colo.1985) ("A constitutional right may be said to be impermissibly burdened when there is some penalty imposed for exercising the right.").

¶ 55 To be sure, "an incompetent person cannot waive his constitutional rights," and trial judges "must carefully safeguard such rights should the judge have a reasonable doubt as to a criminal defendant's competency." *People v. Lopez*, 640 P.2d 275, 278 (Colo.App.1982) (internal quotation marks omitted). The statutory speedy trial right must yield to protection of those rights. *Gallagher v. Dist. Court*, 933 P.2d 583, 588 (Colo.1997) (a reasonable delay beyond the speedy trial deadline may be necessary to protect other fundamental constitutional rights of a defendant).

¶ 56 Even so, the invocation of the constitutional right to self-representation, without more, is an improper basis to suspend proceedings and order a competency evaluation. To conclude otherwise would permit a court to impermissibly penalize the exercise of that constitutional right by requiring a defendant to undergo an unwarranted competency evaluation. *See Pollard*, ¶ 25; *see also Cappelli*, 935 P.2d at 60, 62 (recognizing that subjecting a defendant to a mental competency evaluation constitutes an infringement upon that individual's liberty).

## IV. The Improperly Ordered Competency Evaluation Was Not Harmless

¶ 57 Defendant contends that the trial court's unwarranted competency order violated his statutory right to a speedy trial requiring that his conviction be vacated. I recognize this is a drastic remedy but, under the unique circumstances of this case, I agree.

### A. Standard of Review and Relevant Law

¶ 58 A trial court's denial of a motion to dismiss for violation of speedy trial rights is reviewed de novo. *See People v. Adolf*, 2012 COA 60, ¶ 9, 296 P.3d 251, 253.

¶ 59 Colorado's speedy trial statute requires dismissal if a defendant is not brought to trial within six months of the entry of a not guilty plea, unless the delay falls into one of the exclusion categories set forth by statute. § 18–1–405(1); *see People v. Arledge*, 938 P.2d 160, 165 (Colo.1997). The trial court and the prosecution have the burden of ensuring compliance with this statute. *Arledge*, 938 P.2d at 165.

### B. Analysis

¶ 60 The speedy trial statute mandates that the period during which a defendant is incompetent or is under observation or examination after the defendant's incompetency has been raised "shall be excluded" from the six-month speedy trial calculation. § 18–1–405(6)(a).

¶ 61 Despite the compulsory language of the speedy trial statutes' time exclusions, the fundamental purpose of the speedy trial statute is "to prevent unnecessary prosecutorial and judicial delays to a pending criminal proceeding." *People v. Yellen*, 739 P.2d 1384, 1390 (Colo.1987). Indeed, our supreme court has cautioned against a "wooden or

mechanistic" application of this statute, and instead requires we keep in mind that a " 'just result is intended.' " *Yellen*, 739 P.2d at 1390 (quoting *People v. Moye*, 635 P.2d 194, 195 (Colo.1981)). Accordingly, the statutory exclusions to the speedy trial calculation will not be applied when an unwarranted delay thwarts the fundamental purpose of the statute. *See Arledge*, 938 P.2d at 165–66 (dismissal of charges may result from unwarranted delay); *People v. Chavez*, 779 P.2d 375, 378 (Colo.1989); *People v. Ferguson*, 653 P.2d 725, 727–28 (Colo.1982).

¶ 62 Here, the court's improper referral for a competency evaluation circumvented the very purpose for which defendant sought to exercise his constitutional right to represent himself—to prevent further delays and obtain a speedy trial. Thus, application of the statutory exclusion to speedy trial would thwart the purpose of the speedy trial statute and would yield an unjust result. *See Yellen*, 739 P.2d at 1390. Because defendant was not brought to trial within six months of his not guilty plea as required by section 18–1–405(1), I would vacate his conviction.