23CA0397 Peo v Johnson 09-11-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA0397
City and County of Denver District Court No. 21CR156
Honorable Martin F. Egelhoff, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Dejon Alexander Johnson,

Defendant-Appellant.

---

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE MOULTRIE
Lipinsky and Johnson, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 11, 2025

---

Philip J. Weiser, Attorney General, Marixa Frias, Assistant Attorney General,
Denver, Colorado, for Plaintiff-Appellee

Joshua Martin, Alternate Defense Counsel, Grand Junction, Colorado, for
Defendant-Appellant

¶ 1    Defendant, Dejon Alexander Johnson, appeals his convictions for one count of second degree assault on a peace officer, two counts of second degree assault on a peace officer while in custody, and two counts of third degree assault on a first responder. We affirm in part, reverse in part, and remand the case with directions.

## I.    Background

¶ 2    In January 2021, Johnson was arrested for burglary and motor vehicle theft. A struggle occurred during the arrest in which Johnson kicked Officers Christopher Hill and Reyes Trujillo in the face, and Officer Brian Urlik fell and broke his ankle. The prosecution initiated a case (the assault case) and charged Johnson with the following relevant counts:

(1)    two counts of assault in the second degree under section 18-3-203(1)(c.5), C.R.S. 2025;

(2)    one count of assault in the second degree under section 18-3-203(2)(b.5);

(3)    one count of assault in the second degree under section 18-3-203(1)(c);

(4)    one count of assault in the second degree under section 18-3-203(1)(g); and

(5)     one count of criminal attempt to commit second degree burglary under sections 18-4-203(1), (2)(a), C.R.S. 2020,[1] and section 18-2-101, C.R.S. 2025.

All the assault charges related to Officer Urlik's injuries.

¶ 3     Two days after the prosecution filed the initial complaint (initial complaint), Johnson appeared before a magistrate for an advisement.  At that hearing, Johnson's public defender told the magistrate that Johnson wanted to proceed without an attorney.  The magistrate provided Johnson with a Crim. P. 5 advisement and entered a minute order that said, "Def[endant] req[uests] to proceed without [a public defender].  Req[uest] granted."  The magistrate also scheduled the case for a preliminary hearing a few weeks later.

¶ 4     At the preliminary hearing, which was conducted in county court, Johnson appeared with a public defender and again indicated his desire to proceed without an attorney.  The county court continued the preliminary hearing and did not terminate the public defender's appointment.  Johnson also appeared with a

---

[1] Because section 18-4-203(2)(a), C.R.S. 2020, has been amended, we cite the version in effect on the date the offenses occurred.  *See* Ch. 298, sec. 10, § 18-4-203(2)(a), 2023 Colo. Sess. Laws 1784-85.

public defender at the continued preliminary hearing, at which the public defender raised concerns about Johnson's competency. The county court bound the case over to the district court for a status hearing. The day before the status hearing, the public defender filed a motion to determine Johnson's competency.

¶ 5    During the status hearing, Johnson again expressed his desire to proceed without an attorney. The district court informed Johnson he "ha[d] the right to decide whether [he] want[ed] to have a lawyer or not" but said that it first needed to determine whether Johnson was competent. The district court ordered a competency evaluation and suspended the proceedings until the evaluation process was complete.

¶ 6    Nearly two months later, the district court conducted a hearing at which Johnson appeared with a public defender. The court reviewed the competency evaluation results and found Johnson competent to proceed. Johnson again confirmed that he desired to proceed without an attorney, arguing that the county court had already granted his oral motion to proceed without an attorney. The district court disagreed with Johnson's assertion that the county court had authorized him to represent himself, noting

3

that there wasn't a finding in the file "that satisfie[d] [the court] that [Johnson] ha[d] knowingly[,] . . . voluntarily[,] and intelligently waived [his] right to counsel." The district court set a hearing for the following day to advise Johnson about waiving his right to counsel and to make the appropriate waiver findings on the record.

### A.     First *Arguello*[2] Advisement

¶ 7     Johnson appeared for the advisement hearing and again argued that he had "already been notified of [his] . . . waiver of counsel." The district court explained to Johnson that it had the county court minute orders, but the court file didn't contain findings sufficient to demonstrate that Johnson had validly waived his right to counsel.

¶ 8     The district court provided Johnson with a five-page written advisement that contained several questions mostly requiring a yes or no response. Question number six addressed the charges Johnson faced and appeared as follows:

---

[2] An "*Arguello* advisement," named after *People v. Arguello*, 772 P.2d 87, 95 (Colo. 1989), requires a trial court to conduct a specific inquiry on the record to ensure that a defendant is voluntarily, knowingly, and intelligently waiving their right to counsel.

4

6.    Do you understand that the charge against you is(are):

| Count | | Felony Class | Penalty (DOC/jail) |
|---|---|---|---|
| 1 | 2nd Degree Asssault- Peace Officer - DUR | 3 | |
| 2 | 2nd Degree Assault - Police Officer Intent | 4 | |
| 3 | 2nd Degree Assault - Peace Officer | 4 | |
| 4 | 2nd Degree Assault - Cause Injury | 4 | |
| 5 | 2nd Degree Burglary - Dwelling - Attempt | 4 | |
| 6 | Aggrevated 1st Degree Motor Vehicle Theft | 5 | |
| 7 | Criminal Mischief $1000-$5000 | 6 | |
| 8 | | | |
| 9 | | | |
| 10 | | | |

☑ Yes          ☐ No

¶ 9    The district court reviewed the written advisement with Johnson on the record, confirmed Johnson's signature on the last page, and orally advised Johnson about the possible penalties he faced (first *Arguello* advisement). As relevant here, the district court advised Johnson during the following colloquy:

> The court: [W]ith respect to the possible penalties, sir, as to the . . . class 3 felony — and counsel, correct me if I'm wrong — the range of penalties is anywhere from four to . . . to twelve years.
>
> Johnson: It's ten to thirty-two [years].
>
> The court: Is that correct, counsel?
>
> Johnson: It's ten to thirty-two [years]. Extraordinary risk, Your Honor.
>
> . . . .

5

The court: Is it four to twelve [years] or four to sixteen [years]?

Prosecutor: [On the class 3 felony,] I believe it's four to sixteen [years], Your Honor.

The court: All right.  So[,] . . . the subject range is anywhere from four years to sixteen years in the Department of Corrections, all right?

Johnson: Um-hum.

The court: If there are . . . extraordinary aggravating circumstances, that can extend it up to thirty-six years, all right?

As to the second degree assault class 4 felonies, . . . the range in those is anywhere from two years to eight years.  Again, it could be as much as sixteen years in the Department of Corrections.

¶ 10    Johnson confirmed that he understood the pending charges and their potential penalties.  The district court also advised Johnson that

- he had the right to a court-appointed attorney if he couldn't otherwise afford one;

- there would be various pretrial proceedings leading up to trial that could consist of several phases;

- an attorney could help him to navigate the complex judicial system;

- the rules, procedures, and standards applicable to attorneys would be equally applicable to Johnson during his self-representation; and

- neither his lack of knowledge of the rules or procedures nor his own ineffectiveness during self-representation would be grounds for an appeal or postconviction relief.

¶ 11 The district court determined that nothing about Johnson's education level or his physical, mental, or emotional state prevented him from understanding the advisement. After the oral advisement, Johnson confirmed that he still wanted to proceed with self-representation, his choice was voluntary, and no one had forced, coerced, or influenced him in making his decision. After finding that Johnson made a knowing, voluntary, and intelligent waiver of his right to counsel, the district court allowed the public defender to withdraw.

¶ 12 Immediately after the district court found that Johnson had validly waived his right to counsel, the prosecutor clarified that count one — the class 3 felony — carried a potential range of ten to thirty-two years in the custody of the Department of Corrections (DOC). Given the corrected information about the potential range of

penalties for count one, the district court asked Johnson whether he still wanted to proceed without an attorney. Johnson said that he did.

¶ 13 The district court then reset the preliminary hearing and allowed Johnson to be released on bond under pretrial supervision. When Johnson appeared at the preliminary hearing, he was back in custody on unrelated charges. Johnson remained in custody until he entered a guilty plea in the assault case several months later.

B. Johnson's Plea Agreement

¶ 14 The prosecution dismissed counts one and two of the initial complaint in July 2021. That same day, the district court appointed advisory counsel to assist Johnson.

¶ 15 In September, the prosecution simultaneously filed a plea agreement and a motion to add an eighth count through a second amended complaint. The prosecution agreed to dismiss the remaining counts as part of its plea agreement with Johnson. Johnson entered a guilty plea, but the judicial officer presiding over the hearing rejected the plea agreement.

¶ 16 Less than two weeks later, a different judicial officer accepted the plea agreement, and Johnson went to immediate sentencing.

The district court sentenced Johnson to ninety days in jail with credit for time served and two years of supervised probation.

### C. Invalidation of Johnson's Guilty Plea

¶ 17 In January 2022, the district court issued a warrant for Johnson's arrest based on allegations he had violated the conditions of his probation. The public defender's office was appointed to represent Johnson with respect to the probation revocation, and again, the public defender raised concerns about Johnson's competency to proceed. Johnson again indicated that he desired to represent himself. The court ordered a second competency evaluation for Johnson.

¶ 18 After reviewing the second competency evaluation, the district court found Johnson competent and gave him an additional *Arguello* advisement (second *Arguello* advisement), which largely incorporated the district court's findings in the first *Arguello* advisement. The district court also reviewed with Johnson the allegations in the prosecution's complaint to revoke his probation, his rights with respect to the complaint, and the consequences of

proceeding without an attorney.[3]  After Johnson confirmed that he was thinking clearly and understood the rights he would be giving up by proceeding without an attorney, the district court found Johnson had knowingly, voluntarily, and intelligently waived his right to counsel.

¶ 19   The following week, Johnson filed a motion to withdraw his July 2021 guilty plea, arguing that the sentencing judge had misadvised him about the possible sentencing consequences of his plea if his probation was revoked.  After considering arguments from Johnson and the prosecution, the district court vacated Johnson's guilty plea and sentence.

¶ 20   The district court informed the parties that they needed to "start over" and told Johnson, "I've vacated your plea in [the assault case] . . . .  So basically[,] the charges are reinstated."

¶ 21   In June 2022, the prosecution filed a motion to add seven new counts to the initial complaint and to dismiss original counts one through four and eight, as reflected in a third amended complaint. The relevant newly added counts were

---

[3] The district court also referred to a written advisement that doesn't appear in the record.

- count ten: assault in the second degree under sections 18-3-203(1)(f), (2)(b.5), a class 3 felony;

- count eleven: assault in the second degree under section 18-3-203(1)(f), a class 4 felony;

- count twelve: assault in the second degree under section 18-3-203(1)(f), a class 4 felony;

- count thirteen: assault in the second degree under section 18-3-203(1)(c), a class 4 felony; and

- count fourteen: assault in the second degree under section 18-3-203(1)(c), a class 4 felony.

Count ten related to Officer Urlik's injuries, counts eleven and thirteen related to Officer Trujillo's injuries, and counts twelve and fourteen related to Officer Hill's injuries.

¶ 22    The prosecutor provided Johnson with a copy of the third amended complaint at a hearing held three days later. The district court explained to Johnson that the prosecution was "dismissing the assault counts that allege an attempt to cause bodily injury or serious bodily injury and amend[ing] to an assault where you applied physical force to a peace officer. That's the sum and

substance of their amendment. It doesn't change the classification of the felonies or anything."

¶ 23 Johnson requested a bench trial, which the district court set for November 2022.

### D. Additional Amended Complaints

¶ 24 On the day of the bench trial, the prosecution filed three more amended complaints that amended only count ten of the third amended complaint. The first was filed at 8:30 a.m., the second at 8:47 a.m., and the last (the sixth amended complaint) at 1:21 p.m. The prosecution filed the sixth amended complaint over the lunch break after it had put on its case-in-chief. As relevant here, the sixth amended complaint listed count ten as assault in the second degree under section 18-3-203(1)(c), a class 4 felony.

¶ 25 When the time came for Johnson to present evidence, Johnson chose not to testify and didn't otherwise present any evidence. After the prosecutor and Johnson made their respective closing arguments, the district court found that the prosecution had proved beyond a reasonable doubt that Johnson was guilty of counts ten, eleven, and twelve of the sixth amended complaint. With respect to counts thirteen and fourteen, the district court found that the

prosecution proved beyond a reasonable doubt that Johnson acted recklessly and found him guilty of two counts of a lesser included offense that the prosecution had not requested — third degree assault on a first responder under section 18-3-204(1)(a), C.R.S. 2025 — a class 1 misdemeanor.

## E.    Sentencing

¶ 26    In January 2023, the district court sentenced Johnson to two years in the custody of the DOC for each of the three felony convictions, to be served consecutively, for a total of six years, and imposed a three-year mandatory parole period.  For the two misdemeanor convictions, the district court sentenced Johnson to two years and one day in the county jail for each conviction.  The district court ordered the misdemeanor sentences to run concurrently with each other but consecutively to the felony sentences, with the county jail sentences to be served first.

¶ 27    Johnson appeals, asserting that the district court reversibly erred by (1) interfering with his right to self-representation and continuing the preliminary hearing beyond the statutory timeframe over his objection; (2) finding he validly waived his right to counsel; and (3) sua sponte finding him guilty of lesser included offenses.

¶ 28    As discussed below, we reject Johnson's first and second contentions but agree with his third.

## II.    Legal Principles

### A.    Preliminary Hearing Timeframe

¶ 29    Crim. P. 5(a)(4)(I) provides that a preliminary hearing "shall be held within 35 days of the day of setting, unless good cause for continuing the hearing beyond that time is shown to the court."

### B.    Constitutional Right to Counsel and Valid Waiver Thereof

¶ 30    A defendant's right to legal counsel is protected under both the United States and the Colorado Constitutions. *See* U.S. Const. amend. VI; Colo. Const. art. II, § 16; *see also People v. Arguello*, 772 P.2d 87, 92 (Colo. 1989) (noting that the right to counsel is "considered essential to a fair trial"). "As a corollary to the Sixth Amendment's right to counsel, a defendant has the alternative right to self-representation." *Arguello*, 772 P.2d at 92; *see People v. Romero*, 694 P.2d 1256, 1263-64 (Colo. 1985).

¶ 31    If a defendant requests to proceed with self-representation, the court must "conduct a specific inquiry on the record to ensure that the defendant is voluntarily, knowingly and intelligently waiving the right to counsel" before it can grant the request. *Arguello*, 772 P.2d

at 95. *Arguello* sets forth a nonexclusive list of questions that a court should ask a defendant before allowing them to waive their right to counsel. *Id.* at 95-96. The court is responsible for ensuring that a defendant is "made aware of the dangers and disadvantages of self-representation, so that the record will establish that '[the defendant] knows what he is doing and his choice is made with eyes open.'" *Faretta v. California*, 422 U.S. 806, 835 (1975) (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)). However, "[a] court's failure to comply substantially with this requirement does not automatically render the waiver invalid, but [rather] is an exception which should rarely be invoked." *Arguello*, 772 P.2d at 96.

¶ 32      "A waiver is voluntary if it is 'not extracted by threats or violence, promises, or undue influence.'" *People v. Lavadie*, 2021 CO 42, ¶ 27 (quoting *People v. Davis*, 2015 CO 36M, ¶ 18). It is

> knowing and intelligent if the record clearly shows that the defendant understood the nature of the charges, the statutory offenses included within them, the range of allowable punishments, the possible defenses to the charges and circumstances in their mitigation, and all other facts essential to a broad understanding of the whole matter.

15

*Id.* at ¶ 28.

### C.  Second Degree Assault

¶ 33  Section 18-3-203 describes alternative ways by which a person can commit second degree assault.  As relevant here, a person commits second degree assault if they know or should know a person is a peace officer and the person

- intentionally causes bodily injury to any person while intentionally trying to prevent a peace officer from performing a lawful duty, § 18-3-203(1)(c);

- intentionally causes *serious* bodily injury to any person while intentionally trying to prevent a peace officer from performing a lawful duty, § 18-3-203(1)(c.5); or

- while lawfully in custody, "knowingly and violently" applies physical force against a peace officer who is engaged in the performance of their duties, § 18-3-203(1)(f).

¶ 34  Second degree assault is a class 4 felony.  § 18-3-203(2)(b).  But if the victim suffers "serious bodily injury during the commission or attempted commission of or flight from the

16

commission or attempted commission of" a burglary, it becomes a class 3 felony. § 18-3-203(2)(b.5).

## D.    Sentencing Statutes

¶ 35    For crimes committed on or after July 1, 2020, the presumptive sentencing range for class 4 felonies is two to six years in the custody of the DOC, and the presumptive sentencing range for class 3 felonies is four to twelve years. § 18-1.3-401(1)(a)(V.5)(A), C.R.S. 2025. If a crime presents an "extraordinary risk of harm to society," a sentencing court is required to increase the maximum sentence in the presumptive range by two years for class 4 felonies and four years for class 3 felonies. § 18-1.3-401(10)(a).

¶ 36    Crimes of violence present such an "extraordinary risk of harm to society." § 18-1.3-401(10)(b)(XII). A defendant convicted under subsection (1)(c) of the 2020 version of the second degree assault statute, § 18-3-203(2)(c)(II), C.R.S. 2020,[4] and who caused serious

---

[4] Because the sentencing provisions of the second degree assault statute, subsections (2)(c)(I) and (2)(c)(II) of section 18-3-203, C.R.S. 2020, have been amended, we cite the 2020 version of those provisions, in effect when Johnson was convicted. *See* Ch. 298, sec. 5, § 18-3-203(2)(c)(I)-(II), 2023 Colo. Sess. Laws 1783-84.

bodily injury to a victim, is subject to a crime of violence sentence enhancer that increases the sentence, if imposed, to at least the midpoint but not more than twice the maximum of the presumptive range. *See* § 18-1.3-406(1)(a), (2)(a)(I)(B), (2)(a)(II)(C), C.R.S. 2025; *see also People v. Austin*, 2018 CO 47, ¶ 12 (noting that the 2016 amendments to section 18-3-203 still required a defendant convicted under subsection (1)(c) to be sentenced "in accordance with the provisions of section 18-1.3-406," but no longer required a mandatory prison sentence). Thus, the possible sentencing ranges for Johnson's second degree assault convictions were five to sixteen years for the class 4 felonies and ten to thirty-two years for the class 3 felonies.

¶ 37    Finally, a court is required to sentence a defendant convicted of second degree assault under section 18-3-203(1)(f) to incarceration in the custody of the DOC.

### III.    Standard of Review

¶ 38    It's generally within a court's discretion to grant or deny a motion for a continuance, *Miller v. People*, 497 P.2d 992, 993 (Colo. 1972), and a party asking to continue a preliminary hearing beyond thirty-five days must demonstrate good cause for doing so, *People v.*

18

*Hogland*, 543 P.2d 1298, 1300 (Colo. App. 1975). Accordingly, we review a court's ruling on a request to continue a preliminary hearing for an abuse of discretion. *People ex rel. Gallagher v. Cnty. Ct.*, 759 P.2d 859, 860 (Colo. App. 1988). A trial court abuses its discretion if its ruling is manifestly arbitrary, unreasonable, or unfair or if it misapplies the law. *People v. Payne*, 2019 COA 167, ¶ 5.

¶ 39    Whether a defendant validly waived his right to counsel is a mixed question of fact and law. *Lavadie*, ¶ 22. The validity of a defendant's waiver is evaluated by considering the totality of circumstances at the time of the waiver. *See Davis*, ¶ 18. As a reviewing court, "we 'accept the trial court's findings of historic fact if those findings are supported by competent evidence, but we assess the legal significance of the facts de novo.'" *Lavadie*, ¶ 22 (citation omitted); *see also United States v. Erskine*, 355 F.3d 1161, 1166-67 (9th Cir. 2004) (collecting cases and noting that de novo review is appropriate because courts cannot "expect defendants to recognize that they have not been correctly and fully advised, let alone to point out the court's errors").

## IV.  Analysis

### A.  The District Court Didn't Violate Johnson's Right to Self-Representation or Err by Continuing Johnson's Preliminary Hearing

¶ 40    Johnson contends that the district court violated his right to self-representation by requiring his public defender to remain on the case even though the county court had previously granted his request to proceed without an attorney.  We disagree.

¶ 41    Johnson asserted on multiple occasions that, at the initial advisement hearing, the county court had authorized him to proceed without counsel.  But as Johnson acknowledges, the county court didn't give him an *Arguello* advisement; rather, the county court advised Johnson under Crim. P. 5(a)(2).  An *Arguello* advisement and the defendant's valid waiver of the right to counsel are prerequisites to a court's authorization of a defendant's self-representation.  *Arguello*, 772 P.2d at 95.  Thus, the district court didn't err when it declined to accept that the county court's minute order or Crim. P. 5(a)(2) advisement authorized Johnson to proceed with self-representation.

¶ 42    Johnson also contends that there wasn't good cause for continuing the preliminary hearing in his assault case beyond thirty-five days over his objection.  We aren't persuaded.

¶ 43    The county court set a preliminary hearing in the assault case for February 9 but continued the hearing because a prosecution witness wasn't available on that date.  Johnson failed to include a transcript of the February 9 hearing in the record.  Thus, we must assume the prosecution demonstrated good cause to continue the preliminary hearing.  *See People v. Schupper*, 2014 COA 80M, ¶ 31 n.3 (noting that a reviewing court can assume the trial court's findings are record supported when an appellant fails to provide a transcript).

¶ 44    We acknowledge that, in March 2021, Johnson filed a pro se motion for dismissal of the assault case because a preliminary hearing had not yet been held.  But the proceedings were suspended at the time of his motion due to a pending competency evaluation.  And because Johnson's former counsel raised concerns about Johnson's competency at the same time he requested to proceed without counsel, the district court needed to ensure that Johnson was competent to effect a valid waiver of his right to

counsel before considering whether to allow him to represent himself at the preliminary hearing. *See People v. Woods*, 931 P.2d 530, 534 (Colo. App. 1996) (noting a defendant must be competent to effect a valid waiver of the right to counsel); *see also Blehm v. People*, 817 P.2d 988, 994 (Colo. 1991) ("When a question is raised concerning the defendant's competency, . . . the judge must take steps to resolve that question, and the record must contain clear evidence in support of any determination of competency before any further proceedings may validly be conducted.").

¶ 45    The district court found Johnson competent to proceed on April 22, 2021, and resumed the proceedings. The following day, the district court granted his request for self-representation, dismissed the public defender, and set a preliminary hearing on the charges in the initial complaint for May 7 — within thirty-five days of April 22.

¶ 46    Because the district court necessarily assessed Johnson's competency before authorizing him to represent himself at the preliminary hearing and then set the preliminary hearing within thirty-five days of determining he was competent to proceed, we see no error.

B.    Johnson's Waiver of the Right to Counsel Was Valid

1.    Johnson's Waiver was Voluntary

¶ 47    The People assert we should decline to consider Johnson's claims regarding the "voluntary" element of a valid waiver of counsel because they are undeveloped.  But it's the People's burden to establish a prima facie case that Johnson's waiver was valid, which includes demonstrating that his waiver was voluntary.  *See King v. People*, 728 P.2d 1264, 1268 (Colo. 1986) ("The state bears the burden of demonstrating that a waiver of counsel was knowingly, intelligently, and voluntarily made.")  Nevertheless, the record demonstrates that Johnson's waiver was voluntary because it wasn't achieved through threats or violence, promises, or undue influence.  *See Lavadie*, ¶ 27.

¶ 48    During the first *Arguello* advisement, Johnson confirmed that he was voluntarily waiving his right to counsel.  During the second *Arguello* advisement, Johnson continued to assert his right to self-representation and again said that his decision to waive counsel was voluntary.

¶ 49    Johnson's persistence in seeking to act as his own attorney throughout the proceedings persuades us that his waiver was

indeed voluntary, and nothing in our review of the record indicates otherwise. However, "even if the choice to proceed pro se is 'voluntary,' the waiver is not valid until the court ensures that the waiver is made knowingly and intelligently." *Arguello*, 772 P.2d at 94.

### 2. Johnson's Waiver Was Knowing and Intelligent

¶ 50 Johnson asserts that the waiver of his right to counsel was invalid because, during the first *Arguello* advisement, the district court misadvised him of the possible penalties he faced. We conclude Johnson's waiver was knowing and intelligent under the totality of the circumstances because the range of penalties Johnson faced at the time of the first *Arguello* advisement was commensurate with those he faced at the time of the bench trial.

¶ 51 The below chart summarizes the relevant charges Johnson faced during the assault case. The initial complaint — the one for which the district court gave Johnson the first *Arguello* advisement — is represented in the first column. The sixth amended complaint is represented in the second column and contains the charges Johnson faced during the bench trial.

24

| Initial Complaint | Sixth Amended Complaint |
|---|---|
| Count one: second degree assault under section 18-3-203(1)(c.5) and (2)(b.5), a class 3 felony, against Officer Urlik | Count ten: second degree assault under section 18-3-203(1)(c), a class 4 felony, against Officer Urlik |
| Count two: second degree assault under section 18-3-203(1)(c.5), a class 4 felony, against Officer Urlik | Count eleven: second degree assault under section 18-3-203(1)(f), a class 4 felony, against Officer Trujillo |
| Count three: second degree assault under section 18-3-203(1)(c), a class 4 felony, against Officer Urlik | Count twelve: second degree assault under section 18-3-203(1)(f), a class 4 felony, against Officer Hill |
| Count four: second degree assault under section 18-3-203(1)(g), a class 4 felony, against Officer Urlik | Count thirteen: second degree assault under section 18-3-203(1)(c), a class 4 felony, against Officer Trujillo |
|  | Count fourteen: second degree assault under section 18-3-203(1)(c), a class 4 felony, against Officer Hill |

¶ 52    Johnson raises multiple issues involving the first *Arguello* advisement that he says demonstrate his waiver of counsel wasn't knowing and intelligent.

¶ 53    For instance, Johnson takes issue with the district court's use of the words "possible" and "potential" in reference to the penalties he faced for counts one and two because he faced *mandatory* prison time if convicted under those counts. He also argues that the district court misadvised him on counts two and four because those counts were extraordinary risk crimes subject to a crime of violence sentence enhancer, which exposed him to a nonmandatory prison sentence of between five and sixteen years. He further argues that, because count three was a per se crime of violence, but not an extraordinary risk crime, that count was subject to a nonmandatory prison sentence with a presumptive range of four to twelve years, and not two to sixteen years as the district court advised him.

¶ 54    The People concede — and we agree — that the district court misadvised Johnson regarding the range of penalties for counts two, three, and four. The People agree with Johnson that the penalty range for counts two and four was five to sixteen years. However, the People assert that the presumptive range for count three was two to six years.

¶ 55    Johnson argues that the People's understanding of the sentencing range for count three is incorrect because they rely on

the current version of section 18-3-203(2)(c)(II), C.R.S. 2025, to calculate the presumptive sentencing range. He argues that the presumptive range for count three was four to twelve years because section 18-1.3-406(1)(a) required him to be sentenced to a term of incarceration of at least the midpoint, but not more than twice the maximum of the presumptive range, and he was sentenced under the 2020 version of section 18-3-203(2)(c)(II), which had a presumptive sentencing range of two to six years.

¶ 56 Johnson also relies on *People v. Hodge*, 205 P.3d 481, 486 (Colo. App. 2008), to support his argument that his waiver wasn't knowing and intelligent. In *Hodge*, the defendant argued he didn't knowingly and intelligently enter a guilty plea because the trial court incorrectly advised him about the applicable sentencing range, which was aggravated due to the defendant's probationary status. 205 P.3d at 484-85. The trial court advised Hodge that the applicable sentencing range was four to thirty-two years when, in fact, it was eight to twenty-four years. *Id.* at 485. A division of this court concluded that Hodge was entitled to a hearing on his motion to withdraw his plea because it was impossible for the court to have sentenced him to less than eight years, so "[the] benefit of his

27

bargain was illusory." *Id.* at 485. Johnson thus argues that, under *Hodge*, his waiver of counsel wasn't knowing and intelligent because the district court advised him of a lighter sentence than that for which he was eligible.

¶ 57     In turn, the People argue that the district court's misadvising Johnson about the correct sentencing ranges for counts two, three, and four couldn't have meaningfully impacted whether he knowingly waived his right to counsel because the district court correctly advised Johnson that count one — the class 3 felony — was subject to a sentencing range of ten to thirty-two years in the custody of the DOC.

¶ 58     We reject Johnson's arguments that his waiver wasn't knowing and intelligent for three reasons.

¶ 59     First, his argument that his waiver was invalidated by the district court's word choice of "potential" or "possible" to describe the penalties he faced is unconvincing and conclusory. We fail to see how the district court's use of the words "possible" and "potential" amounts to error — let alone reversible error — when the district court was advising Johnson of the penalties he faced *if* he was convicted. We therefore decline to address this argument

28

further.  *See People v. Thompson*, 2017 COA 56, ¶ 199 (noting that we won't review underdeveloped or conclusory contentions).

¶ 60     Second, we acknowledge that the district court initially misadvised Johnson about the presumptive sentencing range for counts one through four.  However, the district court later correctly advised Johnson that the presumptive sentencing range for count one was ten to thirty-two years and, after doing so, reaffirmed with Johnson that he still desired to proceed without an attorney. *Hodge* is inapplicable because that case involved the defendant's waiver of rights before entering a guilty plea, not a waiver of the right to counsel.  And in any event, Johnson knew the correct sentencing range for count one before the district court's correction. *See Lavadie*, ¶ 28 (a defendant must understand the range of allowable punishments to effect a valid waiver of their right to counsel).  Thus, we aren't persuaded by Johnson's argument that the initial inaccuracies in the district court's first *Arguello* advisement invalidated his waiver of the right to counsel.

¶ 61     Third, the district court later correctly informed Johnson that he faced between ten and thirty-two years in the custody of the DOC if convicted on count one.  Recall that Johnson was convicted

29

of three class 4 felonies: one count under section 18-3-203(1)(c) and two counts under section 18-3-203(1)(f). Notably, the sentences for those convictions were within the sentencing ranges the district court specified during the first *Arguello* advisement. *See People v. Nagi*, 2014 COA 12, ¶ 30 (concluding the court's erroneous advisement was harmless when the defendant's sentence fell within the incorrect sentencing range relied upon by the court and the correct sentencing range), *aff'd*, 2017 CO 12. Yet Johnson remained steadfast in his desire to represent himself. *See People v. Smith*, 881 P.2d 385, 388 (Colo. App. 1994) (a defendant's waiver of the right to counsel is intelligent if the defendant makes his choice "with eyes open to the consequences").

¶ 62    Thus, under the totality of the circumstances, we conclude that the district court's advisement of penalties during the first *Arguello* advisement was sufficient to ensure that Johnson's waiver of the right to counsel was made with "eyes open" to the consequences. *Faretta*, 422 U.S. at 835 (citation omitted); *Woods*, 931 P.2d at 533; *see People v. Johnson*, 2015 COA 54, ¶ 18 (an "intelligent" waiver refers to the defendant's understanding of the

consequences rather than the wisdom of the waiver (citation omitted)).

### 3. The District Court Didn't Have an Affirmative Duty to Readvise Johnson

¶ 63    Although he concedes that a court generally doesn't have an affirmative duty to readvise a defendant about their waiver of counsel if the prosecution amends a complaint, Johnson asserts that, under the circumstances, the district court should have readvised him.  The People acknowledge that federal case law supports readvising a defendant if there has been a substantial change in circumstances but note there is no similar requirement under Colorado law and, even if there were, the amended charges in this case didn't amount to a substantial change in circumstances. We agree with the People.

¶ 64    Johnson has not directed us to, nor have we found, any Colorado law that requires a court to readvise a defendant if charges are reinstated or amended.  And, in any event, he hasn't adequately explained how the reinstated and amended complaints — which were based on the same factual allegations as the initial complaint and subject to many of the same

consequences — amounted to a significant change in circumstances that required a new advisement when the first *Arguello* advisement was sufficient to establish that Johnson's waiver was voluntary, knowing, and intelligent. *See Nagi,* ¶ 30; *Johnson,* ¶ 18.

¶ 65 Regardless of the fact that it wasn't required, the record reflects that the district court did further advise Johnson with respect to whether he wanted to waive his right to counsel when it gave him the second *Arguello* advisement. Although that advisement preceded the reinstatement of the initial complaint by a few weeks, the district court reconfirmed that Johnson wished to represent himself. Moreover, Johnson never revoked his waiver of the right to counsel, and the district court wasn't obligated to reaffirm his waiver. *See United States v. Vann,* 776 F.3d 746, 764 (10th Cir. 2015) (noting that when a court provides a defendant with a sufficient advisement to ensure a voluntary, knowing, and intelligent waiver of the right to counsel, the court isn't required to hold "a separate hearing of equal depth" each time the option to proceed without counsel arises).

¶ 66 For the foregoing reasons, we conclude that Johnson's waiver of the right to counsel was valid.

## 4. Johnson's Other Contentions

¶ 67    Johnson also argues — without citation to authority — that he "cannot reasonably be said to have understood the nature of the charges and the statutory offenses included within them without there ever having been a discussion of the elements of the charges." Because Johnson's argument is conclusory, we decline to address it further. *See People v. Venzor*, 121 P.3d 260, 264 (Colo. App. 2005). Likewise, Johnson asserts that the district court failed to consider statements he made during closing argument that evidenced his alleged mental health issues. But as previously discussed, the district court addressed Johnson's competency twice during the case, and both times the district court found him competent to proceed. And to the extent that he may have been concerned or confused about how the case was proceeding *after* he validly waived his right to counsel, he assumed that risk by choosing to represent himself despite the district court's advisement that an attorney could assist him in navigating the complexities of the legal system. *See Smith*, 881 P.2d at 388 ("[T]he court must honor a defendant's request for self-representation as long as the court is satisfied that

the defendant knows what he is doing and that his choice is made with eyes open to the consequences.").

¶ 68     Johnson raises several other arguments in support of his claim that his waiver of counsel wasn't valid. Because most of these arguments are based on circumstances that occurred after the first *Arguello* advisement, we reject them. *See Davis*, ¶ 18.

### C.    The District Court Erred by Sua Sponte Considering Lesser Included Offenses

¶ 69     Lastly, Johnson asserts that the district court abused its discretion when it sua sponte considered lesser included offenses. In support, Johnson references *People in Interest of J.A.M.*, 43 P.3d 673, 675 (Colo. App. 2001). In *J.A.M.*, a division of this court reversed a judgment because, during a bench trial, the trial court sua sponte considered lesser included offenses after the parties' closing arguments. The People, relying on *People v. Santisteven*, 693 P.2d 1008, 1014 (Colo. App. 1984), assert that, because the district court served as the fact finder, it was allowed to consider lesser included offenses.

¶ 70     We agree with Johnson that circumstances here are similar to those in *J.A.M.* and that the district court reversibly erred.

34

¶ 71    Here, as in *J.A.M.*, neither party requested that the court consider lesser included offenses; yet, the district court did so after closing arguments.  That the defendant in *J.A.M.* was represented by counsel — not self-represented like Johnson — persuades us further that the district court reversibly erred.  As the division explained in *J.A.M.*, "[u]nder appropriate circumstances, either the prosecution or the defense is entitled to have the finder of fact consider a lesser included offense."  43 P.3d at 675.  But there is no "Colorado decision, statute, or rule that allows a trial court in a bench trial to consider a lesser included offense where neither party makes such a request."  *Id.*  In contrast, in *Santisteven*, the division didn't consider whether the trial court erred by sua sponte instructing the jury on lesser included offenses; rather, the division focused on — and rejected — the defendant's contention that "the evidence was insufficient to permit these instructions to be given." *Santisteven*, 693 P.2d at 1014.

¶ 72    Because we agree with the *J.A.M.* division's reasoning, and we reject the People's assertion that *Santisteven* undercuts Johnson's argument, we vacate Johnson's convictions on counts thirteen and fourteen.

## V. Disposition

¶ 73    The judgment is affirmed in part and reversed in part, and the case is remanded to the district court with directions to vacate Johnson's convictions on counts thirteen and fourteen and amend the mittimus accordingly.

JUDGE LIPINSKY and JUDGE JOHNSON concur.